TEXTILE CAPITOL BUILDING CORPORATION, Respondent, *v.* WENDEL FOUNDATION, Appellant.

First Department, February 11, 1938.

*Harold Harper* of counsel [*George Link, Jr.*, and *Mary Lou Allen* with him on the brief; *Harper & Matthews*, attorneys], for the appellant.

*Leslie Kirsch* of counsel [*Joseph Glass, Jerome Weinstein* and *Martin S. House* with him on the brief; *Glass & Lynch*, attorneys], for the respondent.

CALLAHAN, J. The complaint alleges, in substance, that defendant was the owner of the certain parcel of land constituting the northerly half of the block bounded by Thirty-eighth and Thirty-ninth streets, Broadway and Seventh avenue, sometimes known as block 814; that between December 8, 1936, and February 18, 1937, the plaintiff, through Isidor Friedman, its duly authorized agent, and the defendant duly entered into an agreement to lease, whereby it was mutually agreed that defendant, and Isidor Friedman, as tenant, would execute a lease of the premises for a term of twenty-two years, commencing as of twelve o'clock noon, January 1, 1937, and ending December 31, 1958, at certain specified annual net rentals, subject to such changes, if any, in the terms thereof as thereafter and prior to the execution of the lease might be mutually agreed upon between the parties, *and that the form of the lease was to be subject to the approval of the defendant's attorneys.*

It further alleges that at various times between December 8, 1936, and on or about February 19, 1937, " it was duly mutually agreed by and between the plaintiff and the defendant that the terms of and lessee under the lease to be executed pursuant to said agreement be modified so that the terms thereof and lessee thereunder be as provided in the form of lease, a copy of which is hereunto annexed, marked Exhibit A, and is hereby made part hereof." (This alleged lease described the property exactly as described in the complaint, and set forth many covenants, terms and conditions. It was never executed.)

The complaint then goes on to allege that at various times between December 8, 1936, and February 17, 1937, *the said form of lease was duly approved as to form by the defendant's attorneys.*

The complaint further states that the lease provided, among other things, that the plaintiff, upon obtaining possession of the premises, would promptly commence and complete, at its expense, the demolition of the old buildings, and complete the erection of a modern fireproof building, not less than twenty-four stories, at a cost of not less than $2,500,000; that simultaneously with the delivery of the lease the plaintiff would procure at its expense, and deliver to defendant, a completion bond or bonds *satisfactory to defendant*, in an amount at least equal to $2,500,000.

It is then alleged that plaintiff offered to the defendant the Maryland Casualty Company, the George A. Fuller Company and United States Realty and Improvement Company, and the Turner Construction Co., Inc., as guarantors upon the completion bond, and that defendant refused each offer, " without any proper, valid or sufficient reason therefor * * * and in violation of the terms of the agreement to lease and, upon information and

belief," that such refusal was made by the defendant in bad faith and for the purpose of hindering and preventing the performance by the plaintiff of the terms and conditions of the agreement to lease, on the part of the plaintiff to be performed.

Plaintiff alleges due performance on its part, its readiness, willingness and ability to perform, and the prevention of performance by defendant.

The prayer is for specific performance, etc.

The complaint contains many other allegations not essential to the question now before us.

Defendant moved under rule 107 to dismiss the complaint, on the ground that the agreement alleged in the complaint is unenforcible under the Statute of Frauds.

The moving papers show that defendant was incorporated as a charitable and benevolent corporation by special act of the Legislature (Laws of 1935, chap. 947); that its powers are vested in, and its affairs are managed and conducted by, a board of trustees; that George L. Shearer has been president since the organization meeting on June 5, 1935; that no express powers are conferred upon the president by the act or by the by-laws; that there are five principal residuary beneficiaries of the Wendel Foundation; that by resolution of June 5, 1935, the legal affairs of the foundation were to be attended to by a committee of counsel, consisting of representatives from the five different law firms who separately represent the beneficiaries; that no action by defendant requiring the approval of counsel has ever been taken, except by the unanimous approval of the committee of counsel; and that Mr. Shearer's firm represented one of the beneficiaries.

Negotiations with respect to the leasing of the premises were commenced in December, 1935, and plaintiff's assignee submitted several propositions for consideration by the defendant. The culmination of these negotiations was that the board of trustees on December 8, 1936, adopted a resolution reading as follows: " Resolved, to enter into a lease with Mr. I. Friedman of the *North Half* of block 814 for the term of 22 years with three renewals of 21 years each from the 1st day of January, 1937, at the following rentals: The first year the tenant is to pay all carrying charges only; the second year a net rental of $60,000; the third to eleventh year, inclusive, a net rental of $115,000 per year; the twelfth year a net rental of $125,000, and the thirteenth to twenty-second year, inclusive, a net rental of $130,000 per year. The lessee is to agree to erect a building on the property at a cost of approximately $2,500,000, and to furnish a bond for the completion of that building; *the lease to contain such provisions and to be in such form as*

*counsel may approve and that the President be authorized to execute such lease when agreed upon;* the amount of brokerage to be paid to Childs & Humphries, Brokers, at the regular rates to be agreed upon before the execution of the lease; *this lease to be delivered simultaneously with lease next hereinafter authorized of the Southeast portion of the said Block."*

On motion duly made and seconded, it was " Resolved to enter into a lease with Mr. I. Friedman of the part of Block 814 *South* of the center line and East of the Millinery Center Building for the term of 23 years from January 1, 1937, with three renewals of 21 years each, at the following rentals: The first three years the tenant is to pay all carrying charges only; next ten years a rental of $55,000 per year minimum; next ten years a rental of $65,000 per year minimum; property to be appraised between July 1, 1939, and January 1, 1940, and if the appraisal is $1,400,000 or more, the tenant to pay 5% of appraisal for twenty years straight; tenant to put up $30,000 cash security until he supplies a bond for the completion of a mercantile building of about twenty-four stories; tenant to pay to the landlord one-sixth of the taxes monthly for the first half of each year; *the rental during the three renewals to be fixed on a 5% basis; the lease to contain such provisions and to be in such form as counsel may approve, and that the President be authorized to execute such lease when agreed upon; this lease to be conditioned upon the execution of a lease of the North half of Block 814 simultaneously with this lease."* (Italics mine.)

Plaintiff makes no claim that the resolution of December 8, 1936, is, in and of itself, sufficient to satisfy the Statute of Frauds. Plaintiff merely claims that that resolution, a writing signed by the defendant, is a part of the connected chain of writings which satisfy the statute, and that " it appears from examination of all the writings that the signed writing was signed with reference to the unsigned writings " which preceded it. (Restatement of the Law of Contracts, §§ 208, 214.)

The prior negotiations and the writings prepared in connection therewith may be summarized as follows: Plaintiff claims that two attorneys, a Mr. Buek and a Mr. Matthews, were designated to draft the lease by the committee of counsel for the defendant corporation, and that it was the practice that when legal matters came before the committee of counsel for consideration, to ask one or more of the counsel to do the work on behalf of all. It also contends that, pursuant to the instructions of the committee of counsel, a draft of the lease was prepared by counsel acting for the defendant corporation and was submitted to counsel for the plaintiff some time in May, 1936, and a conference was held

on June 19, 1936, by defendant's president, Mr. Shearer, Mr. Buek, Mr. Glass (plaintiff's attorney) and Mr. Friedman, and various changes were discussed and passed upon by defendant's president. Plaintiff also states that at the conclusion of the conference, defendant's president instructed Mr. Buek to proceed with Mr. Matthews in the preparation of a revised draft reflecting the changes which had been reviewed and accepted. There were other meetings with plaintiff and its counsel. Plaintiff fixed November 12, 1936, as the date of conference at defendant's president's office for the purpose of reviewing all changes suggested in the form of the lease. Defendant's president, Mr. Shearer, Mr. Buek, Mr. Matthews and plaintiff's attorney were present, and " Mr. Buek was instructed by Mr. Shearer [defendant's president] to prepare this draft of lease." Plaintiff claims that the draft was prepared by the defendant's counsel and delivered to it on November 14, 1936, with the following letter signed by Mr. Buek: " Enclosed please find two copies of the proposed lease by Wendel Foundation to Mr. Friedman of the *northerly* half of the block 38th to 39th Streets and Broadway. This is intended to constitute a second draft form *subject to such final amendments, if any, as may be later agreed upon.*" It is plaintiff's contention that that lease is complete in all its details; that it is, except for " such final amendments " as were " later agreed upon " in writing, identical with the form of lease annexed to the complaint.

The meeting of December 8, 1936, followed, at which the resolution set forth above was adopted. It is plain, however, that there could be no written memorandum of any completed contract up to that date, for there was as yet no meeting of the minds of the parties on many essential points. We will proceed to consider the subsequent events and the writings prepared in connection therewith.

A special meeting of defendant's trustees was called for December 29, 1936, " to consider a proposal for a modification of the terms of leases of property in Block 814, New York City, which leases were approved at a meeting of the Trustees held on December 8, 1936. The terms of the proposed modification are set forth in a letter, a copy of which is hereto attached." A meeting of the board of trustees was thereafter held on December 29, 1936, and the proposed modifications were not accepted.

Mr. Buek wrote to plaintiff's attorney about January 6, 1937, suggesting a conference with him and Mr. Matthews. The conference was held at plaintiff's attorney's office on January 14, 1937. Various changes were discussed on that day, an adjournment taken to the following day, and the conference was finally continued on the morning of January 18, 1937.

Plaintiff contends that the amendments suggested by both sides were fully reviewed and agreed upon, and it was agreed then that plaintiff's attorney should draft and submit the lease to Messrs. Matthews and Buek, except for a certain few of the amendments which were to be drafted by Mr. Matthews; that plaintiff's draft was submitted to Mr. Matthews and Mr. Buek on January 27, 1937, together with a marked printed draft of the lease; that on January 29, 1937, plaintiff's attorney wrote to Mr. Shearer regarding the agreement reached with Mr. Matthews and Mr. Buek; that the letter was acknowledged on January 30, 1937; that on February 1, 1937, he was advised by Mr. Buek that the trustees of the defendant met on that day, but had adjourned to February 9, 1937, without taking any action with respect to the matter; that on February 15, 1937, Mr. Buek wrote stating: "We are proceeding with the amendment of the printed proofs in accordance with the amendments agreed upon and shall have it reprinted as amended and forwarded to you for your approval prior to the 19th inst;" that plaintiff's attorney approved of the lease; that on February 17, 1937, plaintiff's attorney received from Mr. Buek three printed copies of a suggested lease, with a letter stating that the proposed document had been "amended so as to include the various suggested amendments made by your office and by the sub-committee consisting of Messrs. Matthews and Buek;" that on the following day plaintiff's attorney acknowleged receipt of the proposed lease, and said, in part: "We * * * find same in order and in accordance with the changes agreed upon and same is approved and accepted by my client."

A comparison of the draft of lease of November 14, 1936, and that of February 17, 1937, shows many substantial changes were made.

Do all these documents read together meet the requirements of the Statute of Frauds?

By the resolution of December 8, 1936, defendant's president was to execute and lease only upon the occurrence of all of the following events: (1) Agreement upon the lease; (2) approval by counsel of the provisions contained in the lease and of its form; (3) agreement with Childs & Humphries, brokers, upon the regular rates of commission; and (4) simultaneous delivery of a lease, also authorized, of the southeast portion.

Plaintiff fails to produce sufficient written memoranda to show agreement upon the lease, approval by counsel of the provisions contained therein and of its form, any agreement with Childs & Humphries and a delivery of a lease also authorized of the southeast portion.

There is no resolution or other writing evidencing the authority of defendant's president to designate counsel to act for the five members of the committee. There is no writing or resolution showing approval by defendant's counsel of the lease relied on by plaintiff.

Nothing can be added to or read into an agreement, unless there be ambiguity which gives play for judicial interpretation. (*Jermyn* v. *Searing*, 225 N. Y. 525, 541.) The language of the resolution of December 8, 1936, is perfectly plain, so what plaintiff apparently is seeking to do is to add to that resolution. The draft of the lease attached to the complaint does not interpret the resolution; it contradicts it.

Section 259 of the Real Property Law reads as follows: " A contract for the leasing for a longer period than one year, or for the sale, of any real property, or an interest therein, is void, unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing, *subscribed by the lessor or grantor, or by his lawful agent thereunto authorized by writing.*"

If a material element of a contemplated contract is left for future negotiations, there is no contract enforcible under the above statute. The memorandum, to satisfy the statute, must contain the terms of a concluded contract. It is not enough that the agreement is a note or memorandum in writing where any part of the intended contract, *i. e.*, the contract which the paper sued on purports to memorialize, is left to future negotiations. (*Bernat* v. *West Seventy-Third Street Corp.*, 230 App. Div. 18, 20.)

Even if the resolution of December 8, 1936, could be said to be a sufficient memorandum to evidence a contract, it is a different contract from that alleged in the complaint. The resolution authorized the making of two leases. The making of each is expressly conditioned upon the making of the other. One is a lease of the northerly half of the block, to which the complaint refers; the other is a lease of the southeasterly quarter of the block. Plaintiff fails to show a resolution authorizing a lease of one portion without the other.

The contract to make a lease, alleged in the complaint, is a contract to lease the northerly half of the block only. The complaint does not allege that plaintiff's assignor or plaintiff has entered into or offered to enter into a lease of the southeasterly quarter of the block. The complaint says nothing about the other lease.

For the foregoing reasons the court below was in error in denying defendant's motion to dismiss the complaint. The contract on which the action is founded is unenforcible under the provisions of the Statute of Frauds.

The order so far as appealed from should be reversed, with twenty dollars costs and disbursements, and the motion granted.

MARTIN, P. J., GLENNON, UNTERMYER and DORE, JJ., concur.

Order, so far as appealed from, unanimously reversed, with twenty dollars costs and disbursements, and the motion granted.