NATHAN B. FOGELSON et al., on Behalf of Themselves and Others Similarly Situated, Respondents, *v.* RACKFAY CONSTRUCTION Co., INC., et al., Appellants.

Argued January 10, 1950; decided March 2, 1950.

*Henry Epstein, H. Leonard King, Jules H. Enrich* and *Sidney Rhodes* for appellants. I. It was error for Special Term to issue a mandatory injunction enforcing defendants' alleged oral agreement, not included in the written leases, to provide bus service. (*Halloran* v. *N. & C. Contr. Co.*, 249 N. Y. 381; *Mitchill* v. *Lath*, 247 N. Y. 377; *Thomas* v. *Scutt*, 127 N. Y. 133; *Wilson* v. *Deen*, 74 N. Y. 531; *Woods* v. *Forest Hills South, Inc.*, 172 F. 2d 147; *Absar Realty Co.* v. *Bowles*, 149 F. 2d 654; *Johnson* v. *Bowles*, 145 F. 2d 166; *Lenox Hill Apts.* v. *Goldstein*, 182 Misc. 605; *Lenox Hill Apts.* v. *Coogan*, 52 N. Y. S. 2d 40; *Eidelsberg* v. *Borchard Affiliations, Inc.*, 190 Misc. 157.) II. Even if there were an enforcible agreement by defendants to furnish bus service, it was error to decree specific performance. The court has directed defendants to perform *ultra vires* and illegal acts expressly prohibited by statute. (*Surface Transp. Corp.* v. *Reservoir Bus Lines*, 271 App. Div. 556; *Public Service Comm.* v. *Fox*, 96 Misc. 283, 99 Misc. 43; *De Matteis* v. *McGoldrick Realty Co.*, 259 N. Y. 452; *Public Service Comm.* v. *Rogers Co.*, 184 App. Div. 705; *Thomas* v. *West Jersey R. R. Co.*, 101 U. S. 71; *Pennsylvania R. R. Co.* v. *St. Louis, A. & T. H. R. R. Co.*, 118 U. S. 290; *Palombi* v. *Volpe*, 249 N. Y. 194; *Bronk* v. *Riley*, 50 Hun 489; *Napa Valley Elec. Co.* v. *Calistoga Elec. Co.*, 38 Cal. App. 477.)

*Karl Propper* and *Nathan B. Fogelson* for respondents. I. Defendants have contracted, and breached their contract, to

furnish bus service to the tenants of premises 1535 and 1571 Undercliff Avenue. II. The members of 260 families (about 1,000 persons) suffered complete disorganization of their daily living routine when they were arbitrarily left without bus transportation. III. The reduction of rents by the Federal Housing Expediter, if any, is no adequate remedy for the loss of the necessary transportation. IV. Operation of busses without hire for the exclusive convenience and necessities of plaintiffs and the other tenants of the apartment buildings is not forbidden. (*Olive Kent Park* v. *Moshassuck Transp. Co.*, 189 Misc. 864; *Aronimink Transp. Co.* v. *Public Service Comm.*, 111 Pa. Superior Ct. 414; *Meisner* v. *Detroit, etc., Ferry Co.*, 154 Mich. 545; *Dover, S. & R. St. Ry. Co.* v. *Wentworth*, 84 N. H. 258; *Illinois Highway Transp. Co.* v. *Hantel*, 323 Ill. App. 364; *Utica-Clayville Bus Co.* v. *Waite*, 233 App. Div. 297.) V. The oral agreement to provide bus service is not barred by a provision in the written lease stating that the lease " contains all the agreements and conditions made between the parties hereto ", nor by the parol evidence rule. (*Mitchill* v. *Lath*, 247 N. Y. 377; *Ball* v. *Grady*, 267 N. Y. 470; *Ragette* v. *Maxwell Co.*, 188 App. Div. 715; *Spota* v. *Hayes*, 36 Misc. 532; *Van Ness* v. *Pacard*, 2 Pet. [U. S.] 137; *Norlil Realty Corp.* v. *Tolchinsky*, 181 Misc. 301, 267 App. Div. 948, 975.)

FULD, J. Plaintiffs are tenants, defendants landlords, of two large apartment houses situated in the westerly reaches of the Borough and County of The Bronx, not far from Washington Bridge. Distant three blocks, four or five minutes by foot, is Bridge Plaza, from which point public bus lines run to intersections within a block of two public schools (Orders of New York City Police Commissioner, New York City Record, Nov. 1, 1947, p. 5894, and April 23, 1948, p. 2085), to the subway station at Jerome Avenue and to various other sections of the city.

All of the tenants, prior to the commencement of their initial tenancies, executed leases, and, at their expiration, either renewed them or continued in possession as statutory tenants. They testified that, before they signed for the first time, the buildings' then manager — dead at the time of the trial — orally promised that they would be furnished free bus service to the subway, a mile away, and to the public schools, a half mile

away; had it not been for that promise, they further declared, they would not have moved into the premises. The landlords, denying that free bus service was promised, rely upon the terms of the leases actually executed. While each lease, full and detailed, included among its twenty-five separate paragraphs a provision that the landlords furnish heat and hot water, the writing not only made no reference to busses or to bus service but contained a clause reciting that the instrument embodied " the entire agreement between the parties ".

In any event, promised or not, transportation by private bus was supplied from 1930 until May, 1949; on the latter date, the bus company, which had been hired by the landlords to furnish such service, removed the vehicles because it needed them for its regular franchise runs. The landlords thereupon, in conformity with Federal rent regulations, sought and obtained a " tentative order " from the Federal housing expediter providing for a reduction in rent to compensate the tenants for the diminution in service. The tenants, however, claiming that it would be a hardship to deprive them of private bus service, sued for a mandatory injunction to require its restoration. Following a trial, the court at Special Term granted an injunction ordering the landlords to run at least one bus daily to the subway station at twenty-minute intervals from seven o'clock in the morning until twelve o'clock midnight, and to and from the schools at specified hours six times a day — and the Appellate Division affirmed.

While the record establishes the lack of any justification for injunctive relief, our decision must perforce rest upon the more basic ground that the parol evidence rule prevents proof or enforcement of the oral agreement. And that view renders unnecessary consideration of the further question whether operation of busses by a landlord or by an omnibus company hired by him is illegal, absent compliance with the Transportation Corporations Law and the Public Service Law.

We assume that defendants promised their tenants bus service, but that is not a controlling factor, for — as this court observed in a somewhat similar situation (*Mitchill* v. *Lath*, 247 N. Y. 377, 379) — " The question before us is whether their oral agreement may be enforced in a court of equity." (See, also, *Ball* v. *Grady*, 267 N. Y. 470, 472; *Higgs* v. *de Maziroff*, 263

N. Y. 473, 478; see, also, 3 Williston on Contracts [1936 ed.], § 638, p. 1834.) And whether or not it may be enforced depends in turn upon whether the parol evidence rule is applicable. An important principle of substantive law (see *Higgs* v. *de Maziroff*, *supra*, 263 N. Y. 473, 477; *Mitchill* v. *Lath, supra*, 247 N. Y. 377, 379; see, also, 9 Wigmore on Evidence [1940 ed.], § 2400, p. 3), it was designed to permit a party to a written contract to protect himself against '' perjury, infirmity of memory or the death of witnesses '' (*Thomas* v. *Scutt,* 127 N. Y. 133, 142), and, while its application may on occasion seem to work injustice, '' on the whole it works for good.'' (*Mitchill* v. *Lath, supra,* 247 N. Y. 377, 380.)

The rule, defining the limits of the contract to be construed, forbids proof of an oral agreement to add to or vary the writing. It does not, however, apply where the written contract was not intended to embody the entire agreement between the parties. In general, an oral agreement may be proved only if it is '' not * * * so clearly connected with the principal transaction as to be part and parcel of it.'' (*Mitchill* v. *Lath, supra*, 247 N. Y. 377, 381; see, also, *Ball* v. *Grady, supra*, 267 N. Y. 470; *Halloran* v. *N. & C. Contr. Co.,* 249 N. Y. 381; *Thomas* v. *Scutt, supra*, 127 N. Y. 133; *Eighmie* v. *Taylor*, 98 N. Y. 288; *Wilson* v. *Deen*, 74 N. Y. 531; *Stoner* v. *Stehm*, 200 Iowa 809; *O'Malley* v. *Grady*, 222 Mass. 202; *Farr* v. *Wasatch Chemical Co.,* 105 Utah 272.) Decision in each case must, of course, turn upon the type of transaction involved, the scope of the written contract and the content of the oral agreement asserted. As this court expressed it, '' in the end, the court must find the limits of the integration as best it may by reading the writing in the light of surrounding circumstances, and by determining whether or not the agreement was one which the parties would ordinarily be expected to embody in the writing.'' (*Ball* v. *Grady, supra*, 267 N. Y. 470, 472.)

Where landlord and tenant enter into a lease, it is reasonable to expect that it '' contain the engagements of the parties, and * * * define the object and measure the extent of such engagement ''. (*Eighmie* v. *Taylor, supra*, 98 N. Y. 288, 294-295.) Certainly, where the promise relates to a matter so closely touching upon the landlord-tenant relationship as the landlord's obligation to supply an assertedly essential service —

at least, where, as here, it is rendered off the premises — the promise must be embodied and contained in the lease itself.

While analogies are not overly helpful, a glance at a few cases illumines the problem and confirms our conclusion. In *Ball* v. *Grady, supra,* 267 N. Y. 470, an oral agreement by the vendor of a house to repair a cellar and make it water-tight was held not enforcible, since it was one " which the parties would ordinarily be expected to embody in the writing " (p. 472). In *Mitchill* v. *Lath, supra,* 247 N. Y. 377, an oral agreement by the vendors of certain property to remove an unsightly icehouse located across the road from the subject property was ruled unenforcible; though collateral in form, said the court, it was " closely related to the subject dealt with in the written agreement — so closely that we hold it may not be proved " (p. 382). And in *O'Malley* v. *Grady, supra,* 222 Mass. 202, cited with approval in the *Mitchill* case (247 N. Y., at p. 379), proof of an oral agreement by a landlord to permit his tenant to withdraw from the lease and recover a deposit if he failed to get a license to operate a liquor shop in the store rented, was held unenforcible because it modified the written lease and was not " collateral " to it (p. 203). And, finally, in *Halloran* v. *N. & C. Contr. Co., supra,* 249 N. Y. 381, a landlord's agreement to grant its tenant, an iceman, who had rented space for the carrying on of his business, the exclusive privilege to sell ice to the other tenants on the premises was held unenforcible, upon the ground that it was " part and parcel of the lease " (p. 384). In the course of its opinion, the court wrote (p. 384): " The alleged contract to grant the exclusive privilege to solicit customers in the apartment houses was not a contract separate and distinct from the lease; it was part and parcel of the lease. \* \* \* The lease contains no reference to the privilege and yet the testimony is that the lease would not have been made if the privilege had not been given; that the oral contract was part of the consideration. A covenant of a lessor to furnish heat or elevator service, or to make repairs, is no more a part of the lease than would be his covenant to permit a lessee an exclusive privilege in the premises. All would form part and parcel of one transaction, and part of the consideration. To prove such a contract by oral testimony comes within the condemnation of *Mitchill* v. *Lath* (247 N. Y. 377)."

From the tenants themselves in the case before us comes indisputable acknowledgment that the transaction was single and that the oral agreement not only was part of the consideration but was the inducing cause for the execution of the lease itself. In so many words, they said that they would not have signed the leases had the landlords not promised to furnish bus service.

What reason and principle and precedent make clear is rendered virtually conclusive by one of the provisions in the lease itself. The parties solemnly stipulated not only that the written lease " contains the entire agreement between the parties ", not only that " All prior negotiations and agreements are merged herein ", but also that " Any additions [to] * * * or alterations or changes in this contract * * * to be binding, must be in writing signed by both parties ". In a very real sense, that merger clause announces and demonstrates the all-inclusive nature of the written lease and furnishes still " additional reason " for applying the parol evidence rule. (See 3 Williston, *op. cit.*, § 811A, p. 2282.) In truth, if the lease before us — complete on its face and drafted designedly and explicitly to prevent reliance upon any promise or agreement not included — could be varied and undermined by parol evidence, few written instruments would be safe or secure.

From what has been written, it follows that the promise to furnish bus service " was merely a voluntary concession, granted as a favor to one who was an actual or prospective tenant, and thus subject to recall " (*Halloran* v. *N. & C. Contr. Co., supra,* 249 N. Y. 381, 386 [per CARDOZO, Ch. J., concurring]), and the circumstance that the landlords supplied that service for many years neither creates a duty nor imposes an obligation upon them to continue doing so in perpetuity. (Cf. *Brainard* v. *New York Central R. R. Co.,* 242 N. Y. 125, 134; *Aronimink Transp. Co.* v. *Public Service Comm.,* 111 Pa. Super. Ct. 414, 417, 419.)

The judgments should be reversed and the complaint dismissed, with costs in all courts.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, DYE and FROESSEL, JJ., concur.

Judgments reversed, etc. [See 301 N. Y. 552.]