Edgar J. Nathan, Jr., J.
Plaintiffs are tenants under written leases expiring in 1958 of apartments in a residential building. They seek reformation of their leases and an injunction against certain acts of the owner and the net lessees of the building. The building is a 10-story and penthouse apartment house with doctors occupying the ground floor apartments. There are no stores nor any commercial occupancy. At the time of the trial one apartment on the fifth floor had been vacated, and all the doctors on the ground floor had moved out.
Defendant landlord leased the entire building to defendant Popkin by lease dated May 31, 1957, subject to the existing leases and tenancies of plaintiffs and others, to zoning and building restrictions and regulations, and also to any state of *364 facts a personal inspection would show. Defendant Popkin assigned in part to his associates, the remaining defendants.
The lease between defendants contemplated a complete conversion of the building from residential to commercial usage. Plans for this alteration were filed on October 9, 1957 with the department of buildings and approved on October 16, 1957 by that department. This action was commenced on October 10, 1957. Defendant lessees have commenced the structural changes as the ground floor and other space became available. Walls have been demolished in the doctors’ apartments on the ground floor, causing such noise that one tenant was compelled to leave her apartment and seek quiet away from the building. The debris from these ground floor apartments was removed through the entrance hall and lobby from which the furniture had been removed, creating in the lobby and entrance to the building a dirty and dangerous condition. Since this action was instituted, the lobby furniture has been replaced.
The defendant lessees have stated their intention of continuing the alterations as space becomes available, warning the tenants such work will cause much inconvenience to them because of the noise, dirt and movement of laborers throughout the building, and advising them to move and not to oppose the prosecution of the alterations. It is true the defendant lessees have offered assistance in finding other apartments for the tenants. The defendant lessees have stated their intention of using the sole passenger elevator for the workmen on the upper floors both for carrying building materials and equipment up and carrying the debris down, using the entrance hall and lobby as a means of ingress and egress, unless they find it more economical to construct a chute for the removal of the debris to the street. The freight elevator does not open onto the main halls, including the street floor. If required, a sidewalk bridge is to be erected. The plans call for extending the ground floor over the courtyards so that the building will cover the entire lot. This threatens to create a way of access to the building for intruders by way of the second floor windows. The plans also provide for structural changes in the elevators which are not to be started, however, while there are tenants in the apartments.
The testimony and the exhibits, as well as the arguments of the defendant Popkin as the attorney for the defendant lessees, reveal not only a deliberate course of conduct to compel plaintiffs to surrender their leases and the tenants to move out by rendering plaintiffs’ occupancy unbearable, but also an arrogant assumption that a landlord’s rights are paramount and that a landlord may do as he will with his building as long *365 as he complies with the statutory requirements and regulations, without regard for the contractual and other rights of tenants. These defendants seem to assume they have the sovereign power of condemnation without the corresponding duty of just compensation. Indeed, they charge the plaintiffs with laches for not formally objecting to the proposed conversion until the institution of this action. This defense the court holds to be without merit.
Defendants contend that since the plans for the alteration have been approved, they may proceed with the work, and the plaintiffs, despite unexpired leases, have no right to stop them. The approval of the plans merely means that they are not in conflict with certain interests of the public which are safeguarded by the department of buildings. Such approval also does not empower the landlord to override or disregard contract or other rights. Approval by the department of plans for a new building would not permit its construction by a trespasser without leaving a remedy to the true owner.
Further, there is no reason or necessity to read the departmental approval as authorizing a violation of subdivision (b) of section 12 of the Zoning Resolution. There is no question raised that the building, when completely converted to commercial occupancy, will conform to the Zoning Resolution. But the plaintiffs contend, and rightly, that so long as it is used for purposes of residence, the building can cover no more than 65% of the plot. There is nothing here involved that requires any proceeding before the Board of Standards and Appeals.
There is authority to indicate the broad power of this court of equity to protect against the wrongs herein committed and threatened (see Surrey v. H. & F. Sellmann, Inc., 6 Misc 2d 614; Lustgarten v. 36 Central Park South, 101 N. Y. S. 2d 709; Benedict v. International Banking Corp., 88 App. Div. 488; Proskey v. Cumberland Realty Co., 35 Misc. 50).
Defendants rely upon a clause in the lease which permits landlord to enter and make repairs. They rely on cases such as Koltz v. 97 Columbia Heights Realty Corp. (6 Misc. 2d 840 and cases cited therein p. 842). Such clause and the cases relied upon however relate to alterations and improvements in the building in the use contemplated. They are inapplicable where, as here, an attempt is made to alter or convert its use (see Nabru Associates v. Zimmerman, 247 App. Div. 645, 647; Hessler v. Schafer, 20 Misc. 645, affd. 29 App. Div. 627; Hirson v. Schroeder, 66 N. Y. S. 2d 917).
Nor is this a situation in which relief should be sought before the rent commission. Plaintiffs are not statutory tenants peti *366 tioning for restoration of essential services under the rent laws. They are seeking preservation of essential incidents of their enjoyment of their apartments to which they are entitled under written and unexpired leases, indispensable elements of their tenancies such as safe and clean passage for themselves and guests in and out of the building, through the lobby and entrance hall, up and down in the elevators and in the upper halls, freedom from excessive noise and dirt, and to safety from both physical hazards and the threat of intruders.
Accordingly, an injunction will issue restraining the defendants from building on courtyards in contravention of subdivision (b) of section 12 of the Zoning Regulation, using the passenger elevator for building material, workmen and their equipment or debris, construction of a sidewalk bridge unless required by authorities in connection with work not stayed by the injunction to be issued, or using the premises in any manner which will materially interfere with plaintiff’s enjoyment of the premises leased by them.
With respect to plaintiffs’ cause of action for reformation of the leases, they claim that when the leases were negotiated defendant owner convenanted that it would maintain the residential nature of the occupancy but that by mutual mistake or defendant’s fraud the covenant was omitted from the lease. Concededly, suit on the covenant is barred by the parol evidence rule, of which the Court of Appeals has said: ‘ ‘ while its application may on occasion seem to work injustice 1 on the whole it works for good ’ (Mitchill v. Lath * * * 247 N. Y. 377, 380) ” (Fogelson v. Rackfay Constr. Co., 300 N. Y. 334, 338).
Of course “ the parol evidence rule has no application in a suit brought [to reform or] to rescind a contract on the ground of fraud ” (see Sabo v. Delman, 3 N Y 2d 155, 161). Nevertheless, in such suits plaintiffs must sustain the heavy burden placed upon them to establish fraud.
As the Court of Appeals said in the leading case of Christopher & Tenth St. R. R. Co. v. Twenty-Third St. Ry. Co., (149 N. Y. 51, 58): “In an action for the reformation of a written instrument upon the ground of mistake, the party seeking the reformation must prove that there was a mistake by evidence that is clear, positive and convincing. * * * The grade and degree of proof required to entitle a plaintiff to relief of this character has been many times considered by the courts of England, the Federal and the various state courts of the United States, and their decisions as to the nature of the proof required, show that it must be of the most substantial and *367 convincing character.” (Citing cases.) That heavy burden of proof has not been sustained in this action.
All motions upon which decision was reserved and not otherwise disposed of herein are denied.
Settle judgment in accordance with this decision on two days’ notice.