Harold S. LEE et al., Plaintiffs,

v.

JOSEPH E. SEAGRAM & SONS, INC., Defendant.

No. 72 Civ. 232 (CHT).

United States District Court,
S. D. New York.

April 26, 1976.

Law Firm of Malcolm A. Hoffmann, New York City, for plaintiffs; Malcolm A. Hoffmann, Edward A. Woolley, Robert W. Biggar, Robert C. Agee, David Bender, New York City, of counsel.

White & Case, New York City, for defendant; MacDonald Flinn, E. Miles Prentice, III, Robert W. Mannix, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

After a trial to a jury and a verdict for plaintiffs, defendant has brought on a motion for judgment notwithstanding the verdict pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is denied.

### Facts

The three plaintiffs in this action, Harold Lee (now deceased) and his sons Eric and Lester Lee, owned a 50% interest in Capitol City Liquor Company, Inc. ("Capitol City"), a wholesale liquor distributorship located in Washington, D.C. Defendant, Joseph E. Seagram & Sons, Inc. ("Seagram"), is a distiller of alcoholic beverages. Capitol City carried numerous Seagram brands and a large portion of its sales were generated by the Seagram lines.

Plaintiffs and the other owners of Capitol City became desirous of selling their respective interests in the business and, in May of 1970, Harold Lee discussed the possible sale of Capitol City with Jack Yogman ("Yogman"), Executive Vice President of Seagram. While Seagram was not in the habit of purchasing distributorships (these entities normally passed between independent businessmen), Seagram agreed to act as the conduit for the ownership in this instance since the prospective purchaser, qualified in all other respects, was short of capital. On September 30, 1970, the sale to Seagram was consummated.

Plaintiffs allege that they wanted to continue in the wholesale liquor business in spite of their wish to divest themselves of

their ownership interest in Capitol City. In consequence of this desire, Harold Lee allegedly approached Jack Yogman in May of 1970. Plaintiffs contend that Lee offered to sell Capitol City to Seagram, but conditioned the offer on Seagram's promise to relocate plaintiffs in a new distributorship of their own. It is upon the alleged breach of this latter promise that the instant action is premised. Plaintiffs contend that they performed their obligation under the agreement and that the written sales agreement conveying Capitol City to Seagram bears witness to this, but that defendant breached the alleged oral contract to relocate plaintiffs in a new distributorship. This, then, was the posture in which the case was presented to the jury.

In considering the motion for judgment n. o. v., this Court must apply the same standards as are applicable on a motion for a directed verdict. 5A J. Moore, Federal Practice ¶ 50.07[2], at 2355–56. *See also Hallmark Industry v. Reynolds Metals Co.,* 489 F.2d 8, 13 (9th Cir. 1973), *cert. denied,* 417 U.S. 932, 94 S.Ct. 2643, 41 L.Ed.2d 235, *rehearing denied,* 419 U.S. 1028, 95 S.Ct. 509, 42 L.Ed.2d 304 (1974); *Hannigan v. Sears, Roebuck and Co.,* 410 F.2d 285, 287 (7th Cir.), *cert. denied,* 396 U.S. 902, 90 S.Ct. 214, 24 L.Ed.2d 178 (1969); *O'Neil v. W. R. Grace & Co.,* 410 F.2d 908, 911 (5th Cir. 1969). The Court may grant the motion "only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." 5A J. Moore, Federal Practice ¶ 50.-07[2], at 2356. *See also Jack Cole Company v. Hudson,* 409 F.2d 188, 191–92 (5th Cir. 1969); *Rice v. Atlantic Gulf & Pacific Co.,* 59 F.R.D. 280, 282 (S.D.N.Y.), *aff'd in part, rev'd in part,* 484 F.2d 1318 (2d Cir. 1973). The United States Court of Appeals for the Second Circuit has stated that

> "[t]he motion will be granted only if (1) there is a complete absence of probative evidence to support a verdict for the non-movant or (2) the evidence is so strongly and overwhelmingly in favor of the movant that reasonable and fair minded men in the exercise of impartial judgment could not arrive at a verdict against him."

*Armstrong v. Commerce Tankers Corp.,* 423 F.2d 957, 959 (2d Cir.), *cert. denied,* 400 U.S. 833, 91 S.Ct. 67, 27 L.Ed.2d 65 (1970).

*See also Sotell v. Maritime Overseas Inc.,* 474 F.2d 794, 796 (2d Cir. 1973), and cases cited therein. Additionally, the Court is "bound to view the evidence in the light most favorable to [the party opposing the motion] and to give it the benefit of all inferences which the evidence fairly supports, even though contrary inferences might reasonably be drawn." *Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 696, 82 S.Ct. 1404, 1409, 8 L.Ed.2d 777, 782 (1962). Finally, since the grant of the motion would deprive a litigant of the opportunity of having the issues determined by a jury, the motion should be "cautiously and sparingly granted." 9 Wright & Miller, Federal Practice and Procedure § 2524, at 542.

Defendant's motion is predicated upon eight specific points. They are as follows:

1. As a matter of law, the oral agreement alleged by plaintiffs is so vague and indefinite as to be unenforceable;

2. As a matter of law, plaintiffs' proof of the alleged oral agreement is barred by the parol evidence rule;

3. As a matter of law, plaintiffs' proof of the alleged oral agreement is barred by the statute of frauds (N.Y.G.O.L. § 5–701(10) and N.Y.U.C.C. § 1–206);

4. As a matter of law, the offer to sell the plaintiffs' distributorship upon the alleged condition of the oral agreement to provide another distributorship was not a valid offer;

5. As a matter of law, there was no valid acceptance of plaintiffs' alleged conditional offer;

6. As a matter of law, neither plaintiff Harold S. Lee nor his estate has standing to claim or is entitled to damages;

7. As a matter of law, plaintiffs Lester Lee and Eric Lee have no standing to claim and are not entitled to damages; and

8. As a matter of law, plaintiffs' proof of damages is incompetent because speculative and based upon unwarranted assumptions.

Defendant states that its motion

"is *not* predicated upon any contention that there was *no* disputed. issue of fact upon which reasonable men could differ. To the contrary, defendant's claim is that, as a *matter of law*, plaintiffs wholly failed to plead or offer any competent evidence to support material elements of their breach of contract claim, elements which were essential to make a *prima facie* case permitting submission to the jury. . . . In this context, defendant's motion is in no way dependent upon the credibility of its witnesses or documentary evidence." (Def.'s Memo., at 2) (emphasis in original).

With the standards previously enunciated and the defendant's above-mentioned claim clearly in mind, the Court will proceed to examine the points raised by defendant seriatim.

### Enforceability

Defendant contends that the oral contract, if in fact one existed, was so vague, indefinite, and lacking in essential terms as to render it unenforceable. It is defendant's position that this situation is one where, even assuming that the parties intended to enter into a binding agreement, there is an absence of material terms such that the parties (and the court in which enforcement is sought) would be unable to determine the rights and obligations of the parties under the agreement.

Specifically, defendant contends that the alleged oral contract stated only that Seagram would relocate the plaintiffs in a new distributorship with an "exclusive market", if possible. Defendant cites as lacking from the agreement terms making reference to: (1) time of performance, (2) location of the distributorship, (3) brands to be carried, (4) profitability, (5) sales volume, (6) growth trend, and (7) price. Defendant states that there is no basis for implying any terms since it is clear that Harold Lee was never involved in the purchase or sale of distributorships, despite his thirty years of employment by Seagram. Finally, defendant contends that the agreement as plaintiffs envision it would also be unenforceable since it would have given plaintiffs unbridled discretion in deciding whether to accept or reject a particular distributorship.

Plaintiffs feel that defendant misconstrues the alleged agreement by attributing to it the character of a detailed purchase and sales agreement when in reality it is merely an agreement to provide an opportunity to purchase a liquor distributorship. In plaintiffs' view, the oral contract calls for Seagram to "(1) provide the Lees with the opportunity (2) to purchase one of a finite number of wholesale distributorships (3) approximately half the value and profit potential as the precisely known quantity of Capitol City and to do so (4) within a reasonable time." (Pls.' Memo. at 7).

According to plaintiffs, the res of the agreement, a Seagram distributorship, was certain and specific. Also, the parties had the benefit of the financial history of Capitol City for use as a reference point in interpreting details of their contractual obligations. Price would approximate the plaintiffs' revenue from the sale of Capitol City and the time for performance would be a reasonable time. Thus, plaintiffs conclude that there was sufficient definiteness for both the Court and the jury to find a valid, enforceable contract.

This Court cannot enforce the alleged oral contract unless it can fairly stake out the bounds of the agreement and determine what lies within. This is so, notwithstanding the intention of the parties to bind themselves thereby, since their intentions must be expressed in a manner which reasonably delineates their rights and duties so as to make those obligations susceptible of enforcement. *See generally* 1 Corbin, Contracts § 95, at 394. While it has often been said that courts do not make contracts, *Metro-Goldwyn-Mayer, Inc. v. Scheider*, 75 Misc.2d 418, 347 N.Y.S.2d 755 (Sup.Ct.1972), the law of New York expresses a clear

preference for a construction in favor of validity. [A] meaning that will sustain is preferred over one which will defeat the instrument." *Silverman v. Alpart,* 282 App. Div. 631, 125 N.Y.S.2d 602, 605 (3d Dep't 1953). These standards have been concisely enunciated in *Castelli v. Tolibia,* 83 N.Y. S.2d 554 (Sup.Ct.1948), *aff'd,* 276 App.Div. 1066, 96 N.Y.S.2d 488 (1st Dep't 1950), wherein it was stated:

"It is well settled that, to render a contract enforceable, absolute certainty is not required; it is enough if the promise or agreement is sufficiently definite and explicit so that the intention of the parties may be ascertained 'to a reasonable degree of certainty.' *Varney v. Ditmars,* 217 N.Y. 223, 228, 111 N.E. 822, 824, Ann.Cas.1916B, 758. A contract cannot be ignored as meaningless, except as a last resort. 'Indefiniteness must reach the point where construction becomes futile.' *Cohen & Sons v. M. Lurie Woolens Co.,* 232 N.Y. 112, 114, 133 N.E. 370, 371. Nor can a contract be rejected as uncertain, if it can be rendered certain by reference to something certain; the maxim being, Id certum est quod certun reddi potest—That is certain which may be rendered certain. *Wells v. Alexandre,* 130 N.Y. 642, 645, 29 N.E. 142, 143, 15 L.R.A. 218; Williston on Contracts, Rev.Ed., § 47." *Id.* 83 N.Y.S.2d at 563–64.

■ Certain other concepts play an important role in the Court's determination of enforceability. For example, where a contract is silent regarding the time for performance, the law will imply a duty to perform within a "reasonable time". *Oswald v. Oswald,* 73 Misc.2d 607, 341 N.Y. S.2d 959, 963 (Fam.Ct.1973); *Valley National Bank of Long Island v. Babylon Chrysler-Plymouth, Inc.,* 53 Misc.2d 1029, 280 N.Y. S.2d 786 (Sup.Ct.), *aff'd,* 28 A.D.2d 1092, 284 N.Y.S.2d 849 (2d Dep't 1967). Also, an agreement will not fail for lack of definiteness where it can be rendered certain by reference to extrinsic sources. *St. Joseph's Immigrant Homes, Inc. v. Seaman,* 53 Misc.2d 1095, 281 N.Y.S.2d 143 (Civ.Ct. 1967). For example, New York courts have looked to the prior course of dealings be-

tween the parties, *Borden v. Chesterfield Farms, Inc.,* 27 A.D.2d 165, 277 N.Y.S.2d 494 (1st Dep't 1967); to the fixing of a price through the estimate of a third party, *St. Joseph's Immigrant Homes, Inc. v. Seaman, supra,* 53 Misc.2d 1095, 281 N.Y.S.2d 143; to the manner in which work was done in the past, *Feldman v. Rockaway News Supply Company,* 6 Misc.2d 406, 157 N.Y.S.2d 671 (Sup.Ct.1956); to prior business history, such as would be contained in customer lists or route books, *Barnard Bakeshops v. Dirig,* 173 Misc. 862, 19 N.Y.S.2d 224 (Sup.Ct. 1940); or to custom and practice within an industry, *Metro-Goldwyn-Mayer, Inc. v. Scheider, supra,* 75 Misc.2d 418, 347 N.Y. S.2d 755. Similarly, the courts of New York State will not shy away from enforcing a contract because there appears to be a lack of mutuality or a broad discretion vested in one of the parties. In these situations the law implies a duty of good faith and fair dealing. *Vineyard v. Martin,* 29 N.Y. S.2d 935 (Sup.Ct.1941); *Barnard Bakeshops v. Dirig, supra,* 173 Misc.2d 862, 19 N.Y.S.2d 224; *Wood v. Duff-Gordon,* 222 N.Y. 88, 118 N.E. 214 (1917).

■ The instant contract found by the jury was a simple agreement and was not, as defendant alleges, tantamount to a complex purchase and sales agreement. Liquor distributors are independent business people who hold franchises from the various distillers such as Seagram. The distributorships are generally conveyed from one independent businessman to another without the ownership interest ever touching the distiller. Occasionally, as with the sale of Capitol City, the distiller will hold an ownership interest on a temporary basis. In most cases however, Seagram would have neither occasion nor necessity to enter into a contract which is the functional equivalent of a purchase and sales agreement, since it holds no ownership interest. The Court would be straining unduly to adopt the theory of the contract suggested by defendant.

Seagram's duty under the alleged agreement was merely to notify plaintiffs as they learned of distributors who were consider-

ing the sale of their businesses. Thus, the subject matter of the alleged contract was quite clear. Seagram was aware that plaintiffs would have to reinvest the proceeds from the sale of Capitol City within a time certain or suffer adverse tax consequences. Therefore, the time for performance could well have been marked against that date or a reasonable time for performance could have been implied.

There was a body of extrinsic data, reference to which could well have filled any existing gaps in the agreement. Harold Lee had worked for Seagram for approximately thirty years before becoming an independent distributor. He knew its business, what it could do, and what it could not do in terms of performance under a contractual agreement. Similarly, Seagram had reference to the past operation of Capitol City. Seagram knew the approximate amount of capital the Lees had to invest and also knew the profit and sales history at Capitol City.

Clearly, plaintiffs had a broad discretion in surveying the opportunities which Seagram was to notify them of, and an equally broad discretion in making an eventual decision as to whether or not to purchase. This, however, will not defeat enforcement. Plaintiffs could not arbitrarily reject opportunities called to their attention by defendant. Were they to have done so, they would have been liable in an action for breach of contract since they had a duty of good faith and fair dealing. As Judge Cardozo said, speaking for the New York State Court of Appeals in *Wood v. Duff-Gordon, supra,* 222 N.Y. 88, 118 N.E. 214;

> "The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal. It takes a broader view to-day. A promise may be lacking, and yet the whole writing may be 'instinct with an obligation,' imperfectly expressed (Scott, J., in *McCall Co. v. Wright,* 133 App.Div. 62, 117 N.Y.S. 775; *Moran v. Standard Oil Co.,* 211 N.Y. 187, 198, 105 N.E. 217). If that is so, there is a contract." 222 N.Y. at 91, 118 N.E. at 214.

It is the conclusion of this Court that the oral contract alleged by plaintiffs herein was sufficiently certain to render it susceptible of enforcement.

### Parol Evidence

Plaintiffs (and their business partners Henry and Arthur Lee) and defendant agreed to the terms of the sale of the assets of Capitol City and evidenced this agreement with a writing dated August 18, 1970. Those same parties added certain amendments to that written contract and these were also memorialized by a writing dated August 25, 1970. It is defendant's contention that this contract and the amendments thereto represent the full extent of the mutual promises of the parties and that, as a matter of law, plaintiffs' proof of the alleged oral agreement to relocate plaintiffs in another distributorship is barred by the application of the parol evidence rule.

Specifically, defendant asserts that, assuming *arguendo* the existence of the alleged oral agreement, the oral agreement was part and parcel of the subject matter of the written contract for the sale of the assets of Capitol City and, as such, should have been included in the written instrument. Defendant's position is that the failure to so include the subject matter of the oral agreement in the written instrument would now preclude the receipt of evidence to prove the oral agreement through the operation of the parol evidence rule. Defendant characterizes its obligation under the alleged oral contract as either a condition precedent to the execution of the written contractual agreement or as a part of the consideration supporting the written contract, or both. Thus, defendant concludes that if the oral contract was the inducing cause or raison d'etre for the written contract, then no claim could be made that the oral contract was collateral, *i. e.,* separate, independent, and complete. Reasoning from the proposition that parol evidence will not be received to contradict either express or implied provisions of a written contract nor to enlarge the consideration therefor, defendant concludes that

proof of the oral contract must not be admitted. In defendant's view, the contract is complete. It begins with the phrase "[i]n consideration of the mutual promises herein contained, it is agreed and covenanted as follows." There follows a listing of the mutual obligations of the parties including certain provisions extending beyond the purview of an agreement providing for the straight sale of the assets of a business, e. g., a leasing provision. Defendant asserts therefore that even in the absence of an integration clause, the contract clearly integrates *all* of the mutual promises of the parties.

Plaintiffs assert that the oral agreement was collateral to the written agreement. They allege that this is so even if the execution of the oral contract is considered to have been a condition precedent to the agreement embodied in the written contract since the terms of the two agreements are not contradictory and therefore proof of the oral contract not barred by the parol evidence rule. Plaintiffs cite several factors which they allege support this conclusion.

Initially, plaintiffs contend that the subject matter of the two contracts is entirely different. Secondly, there is not an identity of parties—the written sales agreement runs from defendant to the five Lees while the oral contract runs from defendant to the three Lees. Further, they assert that while the written sales contract contained no integration clause, other contracts between the parties, e. g., the franchise agreement for Capitol City, did in fact contain such a clause. Also, while the written sales agreement was negotiated with Messrs. Fieldsteel, Barth, and O'Brien of Seagram, the oral contract was negotiated with Seagram's Mr. Yogman. Based on all of the aforementioned indicators, plaintiffs conclude that it would not be reasonable to expect that these two distinct agreements would be combined in one writing.

Plaintiffs also point out that defendant failed to call Fieldsteel, Barth or O'Brien

regarding the issue of the intention of the parties to have the written agreement embody all of the mutual promises between them or on the issue of the absence of the integration clause from the written agreement, when presumably these gentlemen would have been in the best position to shed light on the subject. Plaintiffs conclude by stating that Harold Lee's thirty year history as a loyal employee of Seagram, and particularly his warm relationship with Yogman, makes it entirely reasonable that an agreement between them would not be memorialized by a formal written document.

■ The parol evidence rule is not a rule of evidence, but rather is an important principle of substantive law. *Smith v. Bear,* 237 F.2d 79, 83 (2d Cir. 1956); *Fogelson v. Rackfay Construction Co.,* 300 N.Y. 334, 90 N.E.2d 881 (1950).[1] The rule can be stated rather simply: when the parties to a contract have memorialized their agreement in a writing which purports to be a complete and accurate integration, *i. e.,* which embodies all of the mutual rights and obligations of the parties, the Court will exclude evidence of prior or contemporaneous agreements which would vary the terms of the written instrument. *Mitchill v. Lath,* 247 N.Y. 377, 160 N.E. 646 (1928). *See generally* 3 Corbin, Contracts § 573. The purpose of the rule is the prevention of false or fraudulent oral claims and the enforcement of the finality of integrated transactions. *Plum Tree, Inc. v. N. K. Winston Corporation,* 351 F.Supp. 80, 83 (S.D.N.Y.1972); *Mitchill v. Lath, supra,* 247 N.Y. at 380, 160 N.E. at 646.

■ The issue squarely before the Court is whether the written agreement for the sale of the assets of Capitol City was intended to be the complete and accurate integration of all of the mutual promises of the parties. If the written contract was not a complete integration, then the parol evidence rule has no application and proof of the oral contract may be admitted. *Fogel-*

---

1. This Court has previously ruled that the law of New York will govern with regard to the parol evidence and statute of frauds issues. 72 Civ. 232 (S.D.N.Y., June 11, 1975) at n. 3.

*son v. Rackfay Construction Co., supra,* 300 N.Y. 334, 90 N.E.2d 881. If there was an integration, then the rule would operate to bar the admission of evidence of prior or contemporaneous agreements which purport to vary the terms of the written agreement. *Id.* Even where there is a complete integration, the rule will not rise up to bar the admission of evidence in support of a prior oral agreement if the terms of the prior agreement are not inconsistent with the terms of the written integration. *Id.*; *Mitchill v. Lath, supra,* 247 N.Y. at 379–80, 160 N.E. 646. This latter statement is true despite the fact that both agreements touch on the same or similar subject matter. *Thomas v. Scutt,* 127 N.Y. 133, 140–41, 27 N.E. 961 (1891).

In assessing the written contract to determine whether there has been an integration, the Court is mindful of the guideline set forth in *Eighmie v. Taylor,* 98 N.Y. 288 (1885):

> "If upon inspection and study of the writing, read, it may be, in the light of surrounding circumstances in order to its proper understanding and interpretation, it appears to contain the engagements of the parties, and to define the object and measure the extent of such engagement, it constitutes the contract between them, and is presumed to contain the whole of that contract." *Id.* at 294–95.

*See also Higgs v. De Maziroff,* 263 N.Y. 473, 477, 189 N.E. 555 (1934).

■ The written contract and the amendments thereto set forth the specifics - of the sale of Capitol City in great detail. They were the result of moderately lengthy and comprehensive negotiations. Matters touched upon in the writings go beyond the straight sale of assets to include such items as leasing arrangements. While the contract does not contain the standard integration clause, it does begin with the wording, "[i]n consideration of the mutual promises herein contained, it is agreed and covenanted as follows," and ends by stating that "the foregoing correctly sets forth your understanding of our Agreement." Having examined the writings in light of the cir-

cumstances of the case, the Court concludes that it does contain the mutual promises of the parties with respect to the sale of the assets of Capitol City. As such it is a valid integration and the Court will exclude evidence of prior or contemporaneous negotiations or agreements which would vary or be inconsistent with the terms of the written agreement. The Court, however, will not exclude evidence of prior or contemporaneous agreements which are collateral in nature and do not attempt to vary the terms of the written contract.

■ A collateral agreement is one which is "separate, independent and complete . . . although relating to the same object." *Thomas v. Scutt, supra,* 127 N.Y. at 140–41, 27 N.E. [961] at 963. Only where three conditions are met will the Court allow evidence in support of an allegedly collateral agreement. These three conditions were first set forth in *Mitchill v. Lath, supra,* 247 N.Y. at 380–81, 160 N.E. at 647:

> "Under our decisions before such an oral agreement as the present is received to vary the written contract at least three conditions must exist, (1) the agreement must in form be a collateral one; (2) it must not contradict express or implied provisions of the written contract; (3) it must be one that parties would not ordinarily be expected to embody in the writing; or put in another way, an inspection of the written contract, read in the light of surrounding circumstances must not indicate that the writing appears 'to contain the engagements of the parties, and to define the object and measure the extent of such engagement.' Or again, it must not be so clearly connected with the principal transaction as to be part and parcel of it."

*See also Gem Corrugated Box Corp. v. National Kraft Container Corp.,* 427 F.2d 499, 502–503 (2d Cir. 1970); *Plum Tree, Inc. v. N. K. Winston Corporation, supra,* 351 F.Supp. at 83. The determination of whether these conditions have been met thereby precluding the operation of the rule is for the Court. *Plum Tree, Inc. v. N. K.*

*Winston Corporation, supra,* 351 F.Supp. at 84; *Eskimo Pie Corporation v. Whitelawn Dairies, Inc.,* 284 F.Supp. 987, 991 (S.D.N.Y. 1968).

In *Mitchill v. Lath, supra,* 247 N.Y. 377, 160 N.E. 646, plaintiff attempted to enforce an oral promise to remove an icehouse from a tract of land adjacent to the tract of land purchased by plaintiff from defendant. The court held that the oral agreement could not be proven, reasoning that the written sales contract had set forth several obligations including repair obligations and that the promise to tear down the icehouse was one that would ordinarily be expected to be included in the written contract.

Similarly, in *Fogelson v. Rackfay Construction Co., supra,* 300 N.Y. 334, 90 N.E.2d 881, tenants of two apartment houses tried to enforce an alleged oral promise by the landlord to supply them with free bus transportation to the subway and public schools. In spite of the fact that the landlord had gratuitously provided the service for many years the court held that the parol evidence rule barred proof of the oral promise. The court felt that since the alleged oral promise went to the heart of the landlord-tenant relationship, it was reasonable to assume that it would be contained in the lease.

In *Gem Corrugated Box Corp. v. National Kraft Container Corp., supra,* 427 F.2d 499, plaintiff, a jobber who manufactured, processed, and sold corrugated paper products, entered into a written contract with defendant to purchase from defendant over a five year period its requirements of box materials. The terms of the contract were not advantageous to plaintiff and the alleged inducement to enter into the contract was an oral agreement allowing plaintiff to purchase as many shares of defendant's common stock as it wished. Plaintiff executed the written contract, but thereafter was refused when it attempted to purchase the stock. The written contract contained an integration clause. In holding that the parol evidence rule would not bar proof of the oral contract, the United States Court

of Appeals for the Second Circuit noted that

"[t]he proposed sale of stock was not merely an ancillary, contemporaneous agreement; it was the vital element of the overall transaction. Viewed in this proper perspective, it is plain that the provision in the requirements contract that it contains the entire agreement of the parties means that the writing contains the entire agreement as to its limited subject matter alone; and it is equally plain that the parties ordinarily would not embody the stock purchase agreement in a writing concerned only with box materials purchase terms." *Id.* at 503.

█ It is the conclusion of this Court that the facts of the instant case comport more closely with the facts in *Gem* and that the oral agreement to relocate plaintiffs in another liquor distributorship was a collateral agreement, the proof of which will not be barred by the parol evidence rule. Several factors support the Court's conclusion.

Initially, it should be noted that the subject matter of the oral contract was different from the subject matter of the written contract although they arose generally out of the same factual fabric. The oral contract was an agreement which obligated defendant to use its best efforts to provide plaintiffs with the opportunity to purchase another liquor distributorship. In return, plaintiffs would agree to the sale of their interest in Capitol City. The written agreement obligated defendant to pay a sum of money in return for which plaintiffs and Henry and Arthur Lee were to convey the assets of Capitol City to defendant. While defendant maintains that the oral agreement merely expanded the consideration for the written contract, it is clear that each contract contained a separate and distinct set of mutual promises. Additionally, while defendant characterizes the oral agreement as part and parcel of the written contract due to the fact that the agreement to relocate was in the nature of a condition precedent to the sale of plaintiffs' interest in Capitol City, this will not alter the collat-

eral nature of the agreements. As the New York Court of Appeals stated in *Hicks v. Bush,* 10 N.Y.2d 488, 492, 225 N.Y.S.2d 34, 36–37, 180 N.E.2d 425, 427 (1962):

"Parol testimony is admissible to prove a condition precedent to the legal effectiveness of a written agreement . . . if the condition does not contradict the express terms of such written agreement. . . . A certain disparity is inevitable, of course, whenever a written promise is, by oral agreement of the parties, made conditional upon an event not expressed in the writing. Quite obviously, though, the parol evidence rule does not bar proof of every orally established condition precedent, but only of those which in a real sense contradict the terms of the written agreement." *Id.* (citations omitted).

Several other factors, each less than critical when viewed alone, lend weight to the Court's conclusion when viewed together. First, the parties to the two agreements were different. Second, the defendant was represented in the negotiation of the oral contract by Mr. Yogman alone, while the written contract was negotiated for defendant by Messrs. Barth, O'Brien, and Fieldsteel. Yogman took no part in the latter negotiation. Next, the written contract between the parties contained no integration clause, although several other agreements between them did contain such a clause. Finally, the thirty year employment history of Harold Lee with defendant and the oft-expressed mutual regard which the parties had for each other lead to the conclusion that the agreement to relocate was more likely to be sealed with a handshake than with a pen.

In summary, the Court concludes that the written contract contained the entire agreement of the parties with regard to the sale of the assets of Capitol City, but that the oral agreement was not so clearly connected with that transaction as to be part and parcel of it. The oral agreement was collateral and was not inconsistent with the terms of the writing.

## Statute of Frauds

Defendant contends that, as a matter of law, plaintiffs' proof of the alleged oral agreement is barred by two provisions of the New York statute of frauds. The first of these provisions, General Obligations Law § 5–701(10), provides in pertinent part:

"Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:

.  .  .  .  .

"10. Is a contract to pay compensation for services rendered in negotiating . . . the purchase, sale, exchange . . . of a business opportunity, business, its good will, inventory, fixtures or an interest therein. . . . 'Negotiating' includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction. This provision shall apply to a contract implied in fact or in law to pay reasonable compensation . . . ."

It is defendant's contention that Harold Lee acted as a *de facto* broker for defendant in arranging for the sale of Capitol City and that the agreement to relocate the three plaintiffs in another liquor distributorship was the agreed upon compensation for this service. Thus, defendant concludes that since a promised compensation is being claimed for services rendered in negotiating the sale of a business, and since the arrangement is not evidenced by a writing signed by the party to be charged, then plaintiffs would now be barred by Section 5–701(10) of the New York General Obligations Law from suing on that promise.

In its previous opinion denying defendant's motion for summary judgment on this issue, this Court noted that

"[t]he papers on this motion reveal that, although there is no dispute that Harold Lee 'negotiated' the sale of Capital [sic] to defendant, there is a factual dispute as to whether the agreement to relocate them in another distributorship was in-

tended to be the consideration for Harold Lee's efforts, as defendant contends, or whether the promise, supported by separate consideration, was merely a condition precedent to the sale of Capital [sic], as plaintiffs contend."[2]

Since the Court has already concluded that there were two distinct, collateral contracts, each supported by a separate consideration, there would seem to be no need to consider any further the argument proffered by defendant with regard to Section 5–701(10) of the New York General Obligations Law. Harold Lee acted for himself as a principal in each of the contract negotiations and it would be stretching reality to attempt to characterize him as a broker or finder on the facts herein.

■ Defendant also contends that Section 1–206 of the New York Uniform Commercial Code bars enforcement of the oral contract. That section provides in pertinent part:

"[A] contract for the sale of personal property is not enforceable by way of action or defense beyond five thousand dollars in amount or value of remedy unless there is some writing which indicates that a contract for sale has been made between the parties at a defined or stated price, reasonably identifies the subject matter, and is signed by the party against whom enforcement is sought or by his authorized agent."

It is defendant's contention that this section applies to the oral contract to relocate the plaintiffs in another distributorship since implicit in this arrangement would be the sale of the distributorship, its assets, and good will.

As this Court noted in its previous decision denying defendant's motion for summary judgment on this ground:

"[T]here is some suggestion in the papers submitted on this motion that defendant could not have promised to 'sell' another distributorship to plaintiffs because it does not 'own' any distributorships. If such proves to be the case, application of

N.Y.U.C.C. § 1–206 to the agreement between the parties, whatever its terms, would be error."[3]

The trial of this action produced much testimony to the effect that defendant does not, in the ordinary course of its business, "own" distributorships such that it would be in a position to "sell" one. In the main, these business entities are passed from one independent business person to another with defendant merely playing the limited role of deciding whether the purchaser passes muster as the holder of defendant's franchise. It is true that on rare occasions defendant has found itself as owner, for a short period of time, of a distributorship. This was not the case, however, as regards the oral contract.

### Offer

■ Defendant contends that there was no valid offer to sell Capitol City on condition that Lester and Eric Lee be relocated in another distributorship. Specifically, defendant characterizes the oral contract as a condition of the sale of the assets of Capitol City and concludes that under the law of Delaware, the state of incorporation of Capitol City, all of the terms and conditions of the sale of assets of a corporation must be approved by both the directors of the corporation and by a majority of the shareholders.

This characterization of the oral contract as merely a condition of the sale of assets rather than as a separate and distinct agreement does not comport with the finding of the jury. The Court has previously concluded that the jury could have found that two separate and distinct obligations existed and, as such, the argument proffered by defendant on this point is not relevant.

### Acceptance

Defendant next claims that there was no valid acceptance of the offer such that a valid oral contract was formed. The Court

**2.** 72 Civ. 232 (S.D.N.Y., June 11, 1975) at 4–5.

**3.** 72 Civ. 232 (S.D.N.Y., June 11, 1975) at 6.

does not agree. Based upon the testimony presented to the jury regarding the sale of Capitol City as well as the testimony regarding the alleged oral agreement, and viewing the evidence in the light most favorable to the plaintiffs, the Court concludes that the evidence was not so "overwhelmingly in favor of the movant that reasonable and fair minded men in the exercise of impartial judgment could not arrive at a verdict against [defendant]." *Armstrong v. Commerce Tankers Corp., supra*, 423 F.2d at 959.

### Standing

Defendant claims first that Harold Lee or his estate lacks standing to claim damages in this action and secondly that Eric and Lester Lee also lack standing to sue.

■ As to Harold Lee or his estate, defendant contends that Harold Lee negotiated the alleged oral contract on behalf of his sons and that Harold Lee is therefore not a beneficiary of the contract and has no standing to sue for damages thereunder. Little need be said in dismissing this contention. The jury found, and the Court concurs, that all three named plaintiffs were parties to the alleged oral contract. The theory of the case which apparently satisfied the jury was that neither Harold nor Lester nor Eric Lee would have agreed to the sale of his interest in Capitol City unless defendant agreed to relocate the two younger Lees in a new distributorship.

■ In challenging the standing to sue of plaintiffs Eric and Lester Lee, defendant basically revives its theory that the subject of the oral contract was merely a condition of the sale of the assets of Capitol City and was part and parcel of that contract rather than a separate and distinct contract. As such, defendant argues that the right to sue was purely a corporate opportunity, and that the corporation supplants the named plaintiffs as the party entitled to commence suit.

Since the Court has previously concluded that the jury could have found that there were two separate and distinct agreements and, that if such were the case, that all three named plaintiffs were parties to the alleged oral agreement, the Court must respectfully disagree with the defendant on this point.

### Damages

Defendant further claims that plaintiffs' proof of damages is speculative and incompetent. Plaintiffs' proof on damages consisted in part of their construction of a hypothetical model of a liquor distributorship based on a scale of approximately one half the size of Capitol City.[4] Defendant claims that plaintiffs' failure to relate their evidence of damages to an existing distributorship rather than to this hypothetical model caused the jury to engage in "rampant speculation."

■ Initially, it should be noted that the loss of profits which are the direct and proximate result of the breach is the proper measure of damages. *For Children, Inc. v. Graphics International, Inc.*, 352 F.Supp. 1280, 1284 (S.D.N.Y.1972); *William Goldman Theatres v. Loew's, Inc.*, 69 F.Supp. 103, 105 (E.D.Pa.1946), *aff'd*, 164 F.2d 1021 (3d Cir.), *cert. denied*, 334 U.S. 811, 68 S.Ct. 1016, 92 L.Ed. 1742 (1948). This is so notwithstanding the fact that plaintiffs' venture never got off the ground. In *For Children, Inc. v. Graphics International, Inc., supra*, 352 F.Supp. 1280, plaintiff had ordered a large number of children's books which defendant was to print and plaintiff was to market. Plaintiff had received orders from retailers and had commenced promotional activities. The parties clearly contemplated an on-going marketing operation. Thus, loss of profits was held to have been foreseeable and the proper measure of damages.

In the instant case, plaintiffs had a successful history in the wholesale liquor dis-

---

4. There was also evidence elicited that loss of salaries, increased tax consequences, and loss of growth of goodwill flowed from the breach. The Court, however, did not charge on the loss of growth of goodwill. The other elements were deemed proper for the jury's consideration.

tribution business; they had the appropriate capital ready; they had clearly expressed their intention to continue in the business at a new location; they had approached several potential sellers and had commenced preliminary negotiations; and finally, they had placed the capital necessary to make the purchase in Seagram's commercial paper for the express purpose of maintaining liquidity. All of this was known to defendant. Plaintiffs were ready, willing, and able to reenter the business. They had been industrious and successful in this business in the past. It was entirely foreseeable that the harm they would suffer as a result of defendant's breach would be the loss of profits from the anticipated venture. *See also William Goldman Theatres v. Loew's, Inc., supra,* 69 F.Supp. 103.

■■■ The real issue here is whether the plaintiffs' evidence in support of the alleged lost profits was sufficient. The Court must exercise care to ensure that the evidence is sufficient to allow the jury to arrive at a just and reasonable damage figure. Clearly, there is no necessity to predict lost profits with absolute accuracy. On the other hand, the Court may not permit the jury to engage in "rampant speculation" based on insufficient evidence. This policy was cogently stated by Circuit Judge Friendly in *Herman Schwabe, Inc. v. United Shoe Machinery Corp.,* 297 F.2d 906, 909–10 (2d Cir.), *cert. denied,* 369 U.S. 865, 82 S.Ct. 1031, 8 L.Ed.2d 85 (1962):

"Although later Supreme Court decisions have made it plain that 'a defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible,' *Eastman Kodak Co. v. Southern Photo Materials Co.,* 273 U.S. 359, 379, 47 S.Ct. 400, 405, 71 L.Ed. 684 (1927); *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563, 51 S.Ct. 248, 75 L.Ed. 544 (1931), and that 'the jury may make a just and reasonable estimate

of the damage based on relevant data, and render its verdict accordingly,' *Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251, 254, 66 S.Ct. 574, 580, 90 L.Ed. 652 (1946), none has detracted from Mr. Justice Brandeis' statement in Keogh or held that mere proof that a defendant has injured its competitors generally warrants recovery in the absence of evidence that would justify a finding of injury to the particular plaintiff and would supply a rational basis for approximating its amount. To the contrary, 'the jury may not render a verdict based on speculation or guesswork,' *Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. at 264, 66 S.Ct. at 579, 90 L.Ed. 652."

In this case, defendant has by its breach "rendered difficult the ascertainment of the precise damages suffered."

Plaintiffs' proof of lost profits was admitted via the testimony of Ernest L. Sommer, a Certified Public Accountant, who was duly qualified at trial as an expert with experience in evaluating business investments in general and liquor distributorships in particular. That proof consisted of taking a hypothetical model of a liquor distributorship approximately half the size of Capitol City and with the same earnings history and profit potential. Plaintiffs then took a figure representing one-half of the profits derived during the last year of operation of Capitol City and compared it with plaintiffs' proceeds from the sale of Capitol City to develop plaintiffs' return on investment. From this figure they deducted the return on the investment which plaintiffs had made in AAA bonds to mitigate their damages. The result was a percentage figure which indicated the loss occasioned by the breach. By multiplying this loss in return on investment by the amount received by plaintiffs from the sale of Capitol City (and hence available for reinvestment) the plaintiffs approximated the loss which would have been occasioned by the breach in any year. This figure was $83,800 before taxes.

Plaintiffs alleged a period of ten years from the date of trial would have been a fair measure of the life of the new distribu-

torship since this was approximately the length of time that they had held the previous distributorship. Thus, they estimated lost profits from September 1, 1971, the month of liquidation, until June 1, 1975, the date of trial, at $314,000. Similarly, they calculated the loss for the ten year period from June 1, 1975 to May 31, 1985 at $838,000. This latter figure was then discounted to more accurately reflect present worth and was reduced to $549,000. There was no assumption made that profits would increase over the life of the business although this had been the experience at Capitol City. The total loss in profits associated with the breach would thus be in excess of $850,000 based on this before tax projection. The jury verdict for plaintiff was rendered in the amount of $407,850.

This case is distinguishable from cases where an established business is harmed and has a lengthy business history to present to the jury on the issue of damages. This, however, is not a fatal impediment.

"Of course, when the plaintiff has no established business showing potentiality of profits to start with, it will not be so easy for him to produce evidence from which profits can be determined with any degree of certainty, and in most cases it has turned out that he was unable to do so. But there is no logic or sound policy in a rigid rule that will foreclose him if his evidence, without it, is sufficient to get the Court beyond the guessing stage. The whole matter is a question of the evidence. 'It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate.' *Eastman Kodak Co. v. Southern Photo Material Co.,* 273 U.S. 359, 379, 47 S.Ct. 400, 405, 71 L.Ed. 684. ' * * * it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate.' *Story Parchment Co. v. Paterson Parchment Co.,* 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544. If these standards are met, the absence of the additional factor of past performance of a going business—a useful factor no doubt—should not be

fatal to the plaintiff's case." *William Goldman Theatres v. Loew's, Inc., supra,* 69 F.Supp. at 105–106.

Also, where there is a contract and the breach thereof causes harm to a plaintiff and the only difficulty is in measuring the harm, the law will not allow a defendant to escape liability merely because the fixing of damages is difficult or imprecise. *For Children, Inc. v. Graphics International, Inc., supra,* 352 F.Supp. 1280; *Wakeman v. Wheeler & Wilson Manufacturing Co.,* 101 N.Y. 205, 4 N.E. 264 (1886).

" '[A] defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible.' *Eastman Kodak Co. v. Southern Photo Materials Co.,* 273 U.S. 359, 379, 47 S.Ct. 400, 405, 71 L.Ed. 684 (1929). The wrongdoer should bear the risk of uncertainty that his own conduct has created. *Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251, 264–265, 66 S.Ct. 574, 90 L.Ed. 652 (1946)." *Autowest, Inc. v. Peugeot, Inc.,* 434 F.2d 556, 565 (2d Cir. 1970).

A close reading of *Autowest* and the numerous cases cited therein leads this Court to conclude that the instant jury had before it competent proof of damages sufficient to allow it to make such just and reasonable inferences as the evidence warranted. This evidence was debatable to be sure as the able cross-examination by defendant's counsel demonstrated. In fact, the jury apparently employed a critical eye in viewing the evidence on damages since they did not accept the proof at face value. Bearing in mind the severe standards applicable to a motion for judgment n. o. v., the Court must conclude that plaintiffs' proof of damages was competent and the verdict reasonable.

### Conclusion

Viewing the evidence presented in the light most favorable to plaintiffs, *Continental Ore Co. v. Union Carbide & Carbon*

*Corp., supra,* 370 U.S. at 696, 82 S.Ct. at 1409, 8 L.Ed.2d at 782, this Court concludes that there was neither such a complete absence of probative evidence in support of the verdict nor evidence so strongly in favor of defendant that reasonable and fairminded jurors could not arrive at a verdict against defendant. *Armstrong v. Commerce Tankers Corp., supra,* 423 F.2d at 959.

Accordingly, defendant's motion for judgment n. o. v. must in all respects be denied.

So ordered.