HYMAN-MICHAELS COMPANY, Appellant, *v.* SENIOR AND PALMER, INC., Respondent.

(Argued June 7, 1934; decided October 2, 1934.)

*Sam L. Cohen, Henry B. Singer* and *Alfred W. Bressler* for appellant.

*Samuel B. Stewart, Jr.,* and *William F. Sullivan* for respondent.

270

LEHMAN, J. The plaintiff is a corporation engaged in business as a dealer in sheet piling, steel rails and accessories. In August, 1931, it made an oral contract for the sale to E. O. Roberts, Inc., of steel sheet piling to be used by E. O. Roberts, Inc., in connection with the performance of a bridge construction contract in New York. All the terms of the contract were thereafter confirmed in a letter signed by the plaintiff. Included in these terms was an agreement by the plaintiff to repurchase the material, upon stipulated conditions and at a stipulated price, when the bridge construction contract was completed by the Roberts Company.

The steel piling called for by the contract was delivered and accepted in accordance with the contract. Part payment was made by the Roberts Company in cash and a note for the balance was delivered to the plaintiff. The note was not paid, and the plaintiff proved at the trial that, in order to relieve the Roberts Company of some of its financial burden, the parties orally agreed that the piling which is the subject-matter of this action should be immediately resold to the plaintiff at the price for which the plaintiff had agreed to repurchase it upon the completion of the bridge contract, and that the price should be credited upon the note of the Roberts Company. The parties did not at that time contemplate an immediate delivery to the plaintiff of the piling. It was not then in a deliverable state. It was under water and was still required by the Roberts Company in order to complete the bridge contract. One of the terms of this oral contract was that the plaintiff should lease the piling to the

Roberts Company at a rental of one dollar per ton per month for use upon the bridge construction contract.

The oral agreement was never embodied in a written contract and no written lease of the steel sheeting was executed. The financial difficulties of the Roberts Company were becoming acute. Mechanics' liens were filed by some of its creditors upon the unfinished bridge structure upon which it was working. The Roberts Company was not financially able to complete its construction contract and thus to earn moneys out of which these liens might be satisfied. A committee of the creditors, who had filed liens, made an arrangement with the Roberts Company for the completion of the contract by two trustees selected by these creditors. The defendant corporation contracted with the trustees to perform the necessary work for a stipulated price and the Roberts Company assigned to the defendant all its right, title and interest in the materials furnished by the plaintiff which were in use on the work. It was agreed in the written contract that if it should appear that the title of the Roberts Company to these materials was defective, an additional sum should be paid to the defendant. The plaintiff, claiming that it had title to these materials, notified the defendant of its claim and asked that the materials be delivered to it upon the completion of the construction. Upon the defendant's refusal this action was begun.

By stipulation of the parties the case was tried by the court without a jury. The trial judge stated orally that he held that an oral contract for the repurchase of the chattels by the plaintiff was made but that the contract was void under the Statute of Frauds. In accordance with the terms of the stipulation, judgment was then entered for the defendant. Upon the appeal the plaintiff can prevail only if, upon uncontradicted testimony, it appears as a matter of law that title to the sheet piling is in the plaintiff.

The original contract whereby the steel sheeting was bought by the Roberts Company contained, as we have pointed out, an agreement by the plaintiff to repurchase the material from the Roberts Company upon the completion of the work for which it was intended. The agreement of the plaintiff to repurchase the chattels it sold was an integral and inseparable part of the contract to sell, and though the entire contract was oral and no note or memorandum thereof was signed by the Roberts Company, the contract in all its parts was enforceable against it and its assigns, for there was delivery and acceptance of the goods and part payment therefor, sufficient to satisfy the Statute of Frauds. (Cf. *Johnston* v. *Trask*, 116 N. Y. 136; 1 Williston on Sales [2d ed.], § 73.) For that reason the plaintiff now urges that even assuming that the subsequent oral contract to repurchase the material in May, 1932, is unenforceable, it can show title to the chattels under the original contract.

In truth, however, the original agreement to sell, when followed by delivery of the chattels, vested in the Roberts Company full title to the chattels, and that title has never been revested in the plaintiff, if the subsequent oral agreement of May, 1932, is void or unenforceable. Both in form and substance, the original agreement was one to sell and repurchase, and the intention of the parties is manifest that title should pass to, and remain in, the buyer, until the repurchase should be consummated. A construction that would give the agreement of the seller to repurchase the effect of passing the property in the goods sold, back to the seller at the very moment when the seller transferred the goods to the buyer, would defeat the intent of the parties and would in effect transform an agreement to sell into an agreement to lease. Indeed, the Roberts Company when it agreed to buy the chattels from the plaintiff did not in express terms agree to resell the chattels to the plaintiff, though the plaintiff did expressly agree to repurchase them. It is true that

in a bilateral contract an express promise by one party to purchase ordinarily carries with it by implication a correlative obligation by the other party to sell; but the implication, in such case, rests upon the manifest intention of the parties and not upon any artificial rule or presumption. In a contract of purchase and sale, an express promise by the seller to repurchase the goods sold, at a stipulated price, may be intended to confer upon the original buyer a privilege or option or may be intended to impose upon the buyer a correlative obligation to sell. Here there is evidence that the parties intended an option. That would leave no basis for an implication of an obligation to resell.

Irrespective, however, of whether the Roberts Company had an option to resell, or was under an obligation to resell the chattels to the plaintiff at the completion of the contract, the stubborn fact remains that property in the chattels was never retransferred to the plaintiff either under any option or in accordance with any obligation created by the original contract of sale. If the property in the chattels was ever retransferred to the plaintiff, such retransfer was by virtue of the oral contract of May, 1932. The plaintiff has no other title upon which it can rely. That oral contract is, in many respects, different from the agreement to repurchase in the original contract of sale. In place of a retransfer of the chattels to the plaintiff upon stipulated conditions when the bridge construction was completed, the new contract provided for a present sale and a retransfer of title, while the chattels were still being used in the work, and, in addition, a lease of the chattels to the Roberts Company for use during the continuance of that work. The intention was to substitute a present and unconditional resale for an executory and conditional promise to repurchase. The provisions of the original agreement have never been carried out. If the present resale was void and of no effect then the plaintiff's claim of title to the property must fail.

The subsequent assignment by the Roberts Company of the chattels which it had orally agreed to sell to the plaintiff constituted in effect a present assertion of title to these chattels and a denial of the existence or of the validity of its oral contract of sale. The defendant may, as its assignee, invoke the defense of the Statute of Frauds when attempt is made to enforce against it the oral contract. (*Brabin* v. *Hyde*, 32 N. Y. 519; 1 Williston on Sales [2d ed.], § 72.) The plaintiff seeks to avoid the effect of the statute by the claim that the evidence establishes that a memorandum was signed by the Roberts Company; that part payment for the chattels has been given and accepted and that there has been symbolic delivery of the chattels.

It appears that after the oral contract of sale was made by the Roberts Company a stenographer of that company upon the direction of its bookkeeper and credit manager and at the request of a representative of the plaintiff typed an invoice for the chattels upon a blank form with the printed name of the Roberts Company at the top. The invoice states all the terms of the oral contract of sale, and if signed by a duly authorized agent of the Roberts Company would be a sufficient memorandum of the oral contract. The invoice concludes with the clause: " Paid for by you with your credit memo. to be applied as credit on our account with you, receipt of which credit is hereby acknowledged and leaving a balance still due you of $270.59. The piling is held in the above-mentioned job as your property and subject to your order."

After the invoice was prepared the plaintiff's representative took some copies and retained them. Other copies were retained by the Roberts Company, and at the trial produced from its files. The plaintiff gave credit upon its books to the Roberts Company for the amount of the invoice and the bookkeeper of the Roberts Company entered in its journal the transaction as set forth in the invoice. Subsequently at the direction of a superior

officer of the Roberts Company the bookkeeper initialled an entry in the journal marking the transaction as canceled.

If the Roberts Company intended to adopt its printed name at the top of the invoice blank as its signature, or if the bookkeeper had authority to enter the transaction in the journal, it might be urged that the invoice and the entry initialled by the bookkeeper may be regarded as sufficient memoranda of the oral contract of sale. Similarly, if the invoice was delivered to the plaintiff as a memorandum of a completed transaction, then the book entries of the parties made thereafter might constitute part payment. Perhaps the delivery of the invoice might then even constitute a symbolic delivery of the goods. There can, however, be no signed memorandum, no payment and no symbolic delivery unless a duly authorized agent of the Roberts Company did intentionally sign, pay or deliver for that company.

The evidence presented by the defendant shows that no such acts were performed by any duly authorized agent of the Roberts Company — or, at least, the trier of the facts might so find. In that view, the bookkeeper and the stenographer who, it is said, joined in the preparation of the invoice did so without authority, and without personal knowledge of the details of the oral transaction, but solely because the plaintiff's representative asked them to do so, and there was no intention that the invoice should be taken as a memorandum of the transaction until approved by a responsible officer of the Roberts Company. That approval was refused. So, too, the entry in the Roberts Company journal was not the act of any authorized agent or officer of the company. It follows that no title passed to the plaintiff under the oral contract of resale.

The judgment should be affirmed, with costs.

POUND, Ch. J., CRANE, O'BRIEN, HUBBS, CROUCH and LOUGHRAN, JJ., concur.

Judgment affirmed.