KAMAKAZI MUSIC CORP., Barry Manilow and Warner Bros. Publications, Inc., Plaintiffs,

v.

ROBBINS MUSIC CORPORATION and Vicks Lithograph, Inc., Defendants.

No. 80 Civ. 2877 (RWS).

United States District Court, S. D. New York.

Sept. 15, 1981.

Bender & Frankel, New York City, for plaintiffs; Sandor Frankel, New York City, of counsel.

Abeles, Clark & Osterberg, New York City, for defendant Robbins Music Corp.; Robert C. Osterberg, New York City, of counsel.

Evans, Severn, Bankert & Peet, Utica, N. Y., for defendant Vicks Lithograph Corp.; Philip A. Rayhill, Utica, N. Y., of counsel.

## OPINION

SWEET, District Judge.

Currently before the court in this action for copyright infringement are several motions that will be dealt with in the order they were heard. First is the motion by Kamakazi Music Corporation ("Kamakazi") to confirm the arbitrator's award. This has been previously deemed by the court to be a motion for summary judgment by plaintiff Kamakazi on the issue of the validity of the Kamakazi copyrights found by the arbitrator to have been infringed. The second is the motion of plaintiff Warner Brothers Publications, Inc. ("Warner") to dismiss counterclaims asserted by defendant Robbins Music Corporation ("Robbins") and in the alternative seeking a separate trial of the issues. The third set of motions relate to the Kamakazi motion for a preliminary injunction argued on September 4, 1981 seeking to prevent further distribution of certain folios containing Kamakazi compositions. For the reasons stated below, the Kamakazi motion to confirm the arbitra-

tor's award will be granted, the Warner motion to dismiss Robbins' counterclaim will be denied and the Kamakazi motion for a preliminary injunction will also be denied.[1]

## I. Motion for Summary Judgment

The motion regarding validity of the Kamakazi copyrights follows upon this court's opinion in this action dated August 3, 1981 which addressed a motion by Kamakazi to confirm and a cross-motion by Robbins to vacate the awards of the arbitrator. A detailed statement of the facts and the procedural history of this case is contained in the August 3 opinion, 522 F.Supp. 125, familiarity with which is assumed.[2] Briefly, in that opinion this court concluded that the arbitrator, in most essentials, properly disposed of the dispute placed before him by his determinations with regard to the Kamakazi-Robbins license agreement, his findings of infringements, and awards of damages and attorneys' fees with reference to the Copyright Act of 1976, 17 U.S.C. § 101 et seq. (the "Copyright Act"). However, as the arbitrator failed to expressly pass on the validity of the copyrights found to have been infringed (and perhaps lacked the power to do so, see opinion of August 3, 1981, 522 F.Supp. at 131), and did not give Robbins a full opportunity to rebut Kamakazi's prima facie showing of validity represented by certificates of registration placed in evidence, the parties were invited to make further submissions in support of and in opposition to what was deemed to be Kamakazi's motion for summary judgment on this issue. The parties were informed that the court would focus as well on the discrepancy between the consistent claim by Kamakazi of forty-five separate infringements and the finding of the arbitrator that

twenty-five copyrights, comprising "twelve individual works and thirteen compilations or derivative works," had been infringed. Pending decision on this motion, the awards of the arbitrator have been held in abeyance.

Kamakazi has introduced, as exhibits to an affidavit in support of its motion, copies of the certificates of registration of copyrights on the forty-five musical compositions of Barry Manilow encompassed in the Kamakazi-Robbins agreement, which Kamakazi maintained were infringed. According to the copyright law, 17 U.S.C. § 410(c), each certificate constitutes "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." Robbins, it appears, did not challenge the validity of these forty-five copyrights when the certificates were introduced during the arbitration proceedings and does not challenge them now. Their validity thus is established. Id.; Durham Industries, Inc. v. Tomy Corp., 630 F.2d 905, 908 (2d Cir. 1980).

Rather, Robbins presses that the arbitrator, in finding twenty-five infringements, including thirteen of compilations or derivative works, necessarily found infringements of works which were uncopyrighted, since Kamakazi never had any copyrights in such compilations or derivative works. Robbins therefore urges specifically that the award with respect to those thirteen infringements be vacated, that the whole award be vacated because of the failure to specifically identify any infringed copyright, or, in the alternative, that further discovery be granted on this issue.

It appears from the submission of the parties that, indeed, the only relevant copy-

---

1. On August 21, 1981 Robbins served and filed what is fashioned a "supplemental and renewal motion for order vacating the arbitration awards." In essence, it attacks aspects of the arbitrator's actions which were addressed by this court in the opinion dated August 3 and filed August 5, and as such, must be construed as a motion for reargument. That motion is denied as untimely, Local Rule 9(m).

It may be noted with respect to that motion and the supporting papers of Robbins, how-

ever, that this court in its opinion of August 3 did not hold, as Robbins now argues, that Kamakazi could have had a double recovery for the wrong committed, that is, contract damages as well as statutory damages for copyright infringements.

2. The relevant awards of the arbitrator, dated March 6 and April 7, 1981, are attached to the prior opinion as Appendices A and B.

rights held by Kamakazi are on the forty-five separate compositions. It appears further that twelve of the copyrighted works were published by Robbins in "individual works"—that is, individual sheets of music not combined with any other works. Thus, Robbins does not dispute the basis for the finding of these twelve infringements.

However, as alleged by Kamakazi in detail in affidavits with supporting exhibits and essentially unchallenged by Robbins, in addition to the infringements the arbitrator found in the twelve individual works, all forty-five of Kamakazi's copyrighted compositions were also published by Robbins in various groupings in "personality folios" after the expiration of its license. Personality folios were described as printed publications featuring musical compositions by a particular artist in the court's opinion of August 3, 1981. There were eighteen of these folios published by Robbins (examples of which were submitted both to the arbitrator and to this court as exhibits), seven of which matched a particular Barry Manilow Long Playing Record Album ("LP"), and eleven of which did not match any particular Manilow LP. Although in actuality Kamakazi held no separate copyrights on these personality folios qua folios, certain of these eighteen folios were referred to by the arbitrator in his finding of infringements of "thirteen compilations or derivative works." Any doubt on this score is extinguished by reference to Robbins' own argument in post-trial closing memorandum to the arbitrator, that:

> Claimant's [i.e., Kamakazi's] suggestion that it should recover an award of statutory damages for the infringement of '45 separate' copyrights is a further attempt to unjustly compound its recovery. The Copyright Laws specifically treat compilations and derivative works such as the Manilow Folios as 'one work' for purposes of an award of statutory damages (17 U.S.C. § 504(c)); Nimmer, Copyright § 14.04[E], pp. 14–32, 14–33.

Kamakazi asserts, again without contradiction by Robbins, that the number thirteen was arrived at by eliminating from the total eighteen personality folios five non-matching folios which comprised substantial duplication of compositions contained in other such folios. The record shows that Robbins had in fact argued to the arbitrator, on similar as well as other bases, that the total number of infringed folios—to be considered as compilations or derivative works—for statutory damages purposes was ten. Thus, the total of "twelve individual works and thirteen compilations or derivative works" were found by the arbitrator to have been infringed.

■ Of course, basic to the law of copyright is the proposition that proof of the existence and validity of a copyright is prerequisite to a finding of infringement thereof and an award of damages and attorney's fees. 17 U.S.C. §§ 411, 412; *see Warner Bros., Inc. v. American Broadcasting Companies, Inc.*, 654 F.2d 204 (2d Cir. 1981). While a compilation or derivative work which is, essentially, an original collection and assembling, or rearrangement or adaptation of an existing work, 17 U.S.C. § 101, may under the right circumstances be copyrighted, 17 U.S.C. § 103; *see Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d at 909–10; *see also* 17 U.S.C. § 504(c)(1), it is undisputed that none of the Manilow personality folios qua folios were so copyrighted. Only the forty-five separate compositions contained therein, twelve of which were also printed individually, were copyrighted. In other words, the arbitrator committed an error of law to the extent that his assignment of specific infringements could be construed to cover entire personality folios, which were not covered by valid copyrights established or even claimed by Kamakazi.

■ In the circumstances of this case as established from the record, however, this is not a basis for vacation of all or even the pertinent part of the arbitration awards. Mere error in the application or interpretation of law, in a context such as this, is insufficient ground upon which to vacate, so long as the findings and conclusions of the arbitrator are rational, or barely colorable. *John T. Brady & Co. v. Form-Eze*

*Systems, Inc.,* 623 F.2d 261, 264 (2d Cir.), *cert. denied,* 449 U.S. 1062, 101 S.Ct. 786, 66 L.Ed.2d 605 (1980); *Andros Compania Maritima S.A. v. Marc Rich & Co., A.G.,* 579 F.2d 691, 704 (2d Cir. 1978); *Marcy Lee Mfg. Co. v. Cortley Fabrics Co.,* 354 F.2d 42, 43 (2d Cir. 1965); *MCT Shipping Corp. v. Sabet,* 497 F.Supp. 1078, 1082–83 (S.D.N.Y.1980). This is not a case of "manifest disregard of the law"—where the arbitrator understood and correctly stated the law, but proceeded to ignore it. *Andros Compania Maritima, supra,* 579 F.2d at 704; *Drayer v. Krasner,* 572 F.2d 348, 352 (2d Cir.), *cert. denied,* 436 U.S. 948, 98 S.Ct. 2855, 56 L.Ed.2d 791 (1978); *Reynolds Sec. Inc. v. Macquown,* 459 F.Supp. 943, 945 (W.D.Pa.1978); *Amerada Hess Corp. v. Local 22026 Federal Labor Union, AFL–CIO,* 385 F.Supp. 279, 284 (D.N.J.1974); *see Reichman v. Creative Real Estate Consultants, Inc.,* 476 F.Supp. 1276 (S.D.N.Y.1979).

Here, particularly in view of Robbins' own urging to the arbitrator that the personality folios, taken as compilations or derivative works, be considered the basic units infringed, including citation to authority for that proposition, I cannot conclude that the arbitrator's apparent error in assigning specific infringements was such as to compel vacation. Indeed, in any event in view of the difficulties in determining separate infringements, *cf. Robert Stigwood Group Ltd. v. O'Reilly,* 530 F.2d 1096 (2d Cir.), *cert. denied,* 429 U.S. 848, 97 S.Ct. 135, 50 L.Ed.2d 121 (1976); *Iowa State Univ. Research Foundation, Inc. v. American Broadcasting Companies, Inc.,* 475 F.Supp. 78, 81–83 (S.D.N.Y.1979), *aff'd,* 621 F.2d 57 (2d Cir. 1980); *Cory v. Physical Culture Hotel Inc.,* 14 F.Supp. 977, 985 (W.D.N.Y.1936), *aff'd* 88 F.2d 411 (1937), it seems that the findings and conclusions with respect to infringements represent a rational, if in part unfounded, as to entire folios, effort to arrive at a fair approximation of the aggregate wrong committed by Robbins to Kamakazi's rights under license agreement and the copyright law. All things considered, it is

difficult to see how Robbins was prejudiced by this error.

Although what has been deemed Kamakazi's motion for summary judgment on the issue of validity of the twenty-five copyrights found by the arbitrator to have been infringed, cannot be granted in full because of the improper specific assignment of infringements just referred to, the motion of Kamakazi to confirm the awards of the arbitrator will now be granted in all other respects.

II. Motion to Dismiss Robbins' Counterclaims.

Robbins is asserting four counterclaims on behalf of its affiliate, Big 3 Music Corporation ("Big 3")[3], against Warner for printing the music to four songs in violation of Big 3's copyrights. Each counterclaim corresponds to one song. To Warner's claim of duly issued licenses from Big 3 for each of the four songs, Big 3 contends that the licenses were rescinded. Warner has moved under Fed.R.Civ.P. 12(b)(6) to dismiss these counterclaims for failure to state claims upon which relief can be granted.

The affidavits and accompanying exhibits submitted establish that on May 15, 1980 four licenses were issued by Robbins to Warner to print the four songs in question in a music folio entitled "Urban Cowboy" published by Warner. A letter also dated May 15, 1980, written by Warner to Big 3, established a reciprocal agreement to the effect that Warner would grant similar licenses to Robbins. This agreement was again referred to in a telephone conversation between representatives of Warner and Big 3 six months later on November 12, 1980. This conversation was recorded by Robbins without Warner's knowledge.

Also in November 1980, Warner filed suit against Big 3 seeking remedies for trademark infringement, unfair competition, and dilution of trademark. Big 3 had printed a music folio or music book, entitled "Urban Cowboy Music." This folio contained the

---

**3.** It is asserted and uncontested that Robbins and Big 3 are affiliates and should be treated as

the same party.

four songs referred to above from the movie "Urban Cowboy" as well as other country and western compositions. The cover of Big 3's "Urban Cowboy Music" folio contained the title and a logo associated with the movie, Warner held licenses to the trademarks to both the title and the logo and sought to prevent Big 3 from infringing on these trademarks. Before Big 3 answered the complaint, the parties settled the dispute on February 27, 1981. The settlement and an accompanying court order dated March 4, 1981 enjoined the use of the trademarks, prevented further distribution of the infringing folio, caused the destruction of the printing plates for the cover and title page of the infringing folio and awarded damages for the past trademark infringement by Big 3 with its "Urban Cowboy Music" folio. The settlement, however, related only to the trademarks infringed upon and did not refer to Warner's "Urban Cowboy" folio or to the four songs in question.

Throughout this prior suit and settlement, Big 3 alleges it continued to try to obtain licenses to other songs pursuant to the reciprocal agreement and in a letter dated January 14, 1981 Big 3 threatened to rescind the licenses to the four songs used in Warner's "Urban Cowboy" folio unless Warner granted Big 3 licenses to four songs pursuant to the agreement. On that same date Warner wrote Big 3 a letter accompanied by proposed licenses for three songs, claiming that because Robbins had reneged on the informal agreement, it was no longer in effect, and that the three accompanying licenses were to be governed solely by the terms of the proposed licenses. The parties never fully agreed on the terms, and on March 22, 1981 Big 3 sought to rescind the licenses to the four Urban Cowboy songs claiming Warner's breach of the reciprocal agreement. Considering the licenses rescinded, Big 3 now claims that Warner's continued publication of the "Urban Cowboy" folio is an infringement on Big 3's copyrights giving rise to its counterclaim.

■ Warner urges that the licenses granted by Big 3 to Warner on May 15, 1980 are defenses to the copyright infringement suit and that, as a matter of law, Warner is entitled to have the counterclaims dismissed. Although there are no allegations in Big 3's counterclaim that the four licenses had been rescinded, the counterclaim must be read in light of the supporting affidavits which claim such rescission. *Desrosiers v. American Cyanamid Co.*, 377 F.2d 864, 871 n.8 (2d Cir. 1967). In Rule 12(b)(6) motions, when "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Since this Rule 12(b)(6) motion is to be treated under the summary judgment standards of Rule 56 this court must determine whether in light of the pleadings and affidavits there remains a "genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c). Such issues remain.

■ The principal issue presented by the affidavits and exhibits is whether the parties intended to modify the licenses by a reciprocal agreement. If the licenses are determined to be integral, and the full expression of the agreement between the parties, the parol evidence rule prohibits parol evidence from varying or contradicting the terms of the agreement. *Laskey v. Rubel Corp.*, 303 N.Y. 69, 71, 100 N.E.2d 140 (1951); *Fogelson v. Rackfay Constr. Co.*, 300 N.Y. 334, 338, 90 N.E.2d 881 (1950). The intent is derived from the circumstances surrounding the agreement. In *Fogelson v. Rackfay Constr. Co.*, the Court of Appeals stated:

> Decision in each case must, of course, turn upon the type of transaction involved, the scope of the written contract and the content of the oral agreement asserted . . . . ["T]he court must find the limits of the integration as best it may by reading the writing in light of surrounding circumstances and by determining whether or not the agreement was one which the parties would ordinarily be expected to embody in the writing."

*Ball v. Grady,* supra, 267 N.Y. 470, 472, 196 N.E. 402, 403.

300 N.Y. at 338, 90 N.E.2d 881.

■ In this case the licenses contain merger clauses stating that the written agreements constitutes the entire agreement between the parties which may only be modified by an agreement signed by the parties. Such a merger clause generally creates a strong presumption of an integration. *Orth-O-Vision, Inc. v. Home Box Office,* 474 F.Supp. 672, 679 (S.D.N.Y.1979). However, as mentioned above, the surrounding circumstances must also be considered. There is evidence that reciprocal agreements in are a common industry practice (Affidavit of Steven L. Cotler, affirmation # 5, August 14, 1981) sufficient to rebut the presumption of the validity of a merger clause. Warner acknowledged the existence of a separate reciprocal agreement in letters concurrent with and subsequent to the execution of the licenses and in subsequent oral statements. Thus, factual issues as to the existence of the agreement and its term are sufficiently established to defeat the motion for summary judgment.

■ Warner also seeks to dismiss the counterclaim as a compulsory counterclaim which should have been raised in the prior action settled on February 27, 1981. *Paramount Pictures Corp. v. The Big 3 Music Corp.,* 80 Civ. 6345 (LPG); Fed.R.Civ.P. 13(a). Although not expressly provided for, the defense of compulsory counterclaim is properly raised under Rule 12(b)(6) since its availability appears in the plaintiffs pleadings. *Southard v. Southard,* 305 F.2d 730, 732 n.1 (2d Cir. 1962) (defense of res judicata properly raised); *Pyles v. Keane,* 418 F.Supp. 269, 273 (S.D.N.Y.1976), quoting *Thistlethwaite v. City of New York,* 362 F.Supp. 88, 91 (S.D.N.Y.1973), *aff'd,* 497 F.2d 339 (2d Cir. 1974), *cert. denied,* 419 U.S. 1093, 95 S.Ct. 686, 42 L.Ed.2d 686 (1979) (defense of collateral estoppel properly raised).

■ Fed.R.Civ.P. 13(a) requires that a counterclaim must be asserted "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." If such a matter is not brought up it is thereafter barred. *Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 n.1, 94 S.Ct. 2504, 2506, n.1, 41 L.Ed.2d 243 (1974); *Harris v. Steinham,* 571 F.2d 119, 122 (2d Cir. 1978). Warner asserts that Robbins' claim for copyright infringement of the four "Urban Cowboy" songs should have been brought in the prior trademark infringement suit. As the rule indicates, resolution of this issue turns on whether the copyright infringement action concerning Warner's "Urban Cowboy" folio and the trademark violation concerning Big 3's "Urban Cowboy Music" folio arose from the same transaction or occurrence. The definition of transaction or occurrence does not require an identity of factual backgrounds. *Moore v. New York Cotton Exchange,* 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926); *United Artists Corp. v. Masterpiece Productions, Inc.,* 221 F.2d 213, 216 (2d Cir. 1955). More important is the logical relationship between the complaint and the counterclaim. The relevant consideration is whether the pertinent facts of the different claims are so logically related that issues of judicial economy and fairness mandate that all issues be tried in one suit. *United States v. Aquavella,* 615 F.2d 12, 22 (2d Cir. 1979); *Harris v. Steinham,* 571 F.2d 119, 123 (2d Cir. 1978). The court should also consider the extent of identity of facts and the mutuality of proofs. *Federman v. Empire Fire & Mar. Ins. Co.,* 597 F.2d 798, 811–12 (2d Cir. 1979); *Pipelines Local Union No. 798 v. Ellerd,* 503 F.2d 1193, 1198 (10th Cir. 1978).

■ First, the music folios, that are the subject of the prior claim and the current counterclaim, are different folios. The prior trademark claim concerned the Big 3 "Urban Cowboy Music" folio; the current counterclaim concerns the Warner "Urban Cowboy" folio. This indicates that the prior claim and current counterclaim arose from different transactions or occurrences. *See Clair v. Kastar,* 138 F.2d 828, 830 (2d Cir. 1943).

Second, the prior action dealt with trademark infringements on the cover of Big 3's folio and injuries resulting therefrom, not with the songs contained therein. The current action deals solely with alleged copyright infringements by Warner in its folio. Thus, the only connection is that we are dealing with issues relating to music folios dealing with the movie "Urban Cowboy." The claims concern different types of claims as to different parties and their folios. Thus the logical relation between the two claims is too tenuous.

The evidence to be considered in both actions also differs. The prior action could have dealt with proof of the existence of the trademarks and proof of the likelihood of confusion between the marks. *American Footwear Corp. v. General Footwear Co.*, 609 F.2d 655, 664 (2d Cir. 1979), *cert. denied*, 445 U.S. 951, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980). The current action will consider and require proof of the validity of the licenses granted by Big 3 to Warner, the alleged recission of those licenses, whether the documents were an integration and the effect of the merger clause. These issues and proofs bear no relation to the prior trademark action. Thus the logical relationship between the claims is even more tenuous.

Since there is no effective logical relationship between the two claims aside from both relating to "Urban Cowboy" music folios, the subject matters of the two suits are different, and the issues and proofs are different. Big 3's counterclaim, therefore, was permissive and Robbins is not barred from asserting the claim in the present action. Consequently, the issue of when Big 3's action arose and the effect of settling the prior case before an answer had been filed on the compulsory nature of the counterclaim need not be addressed.

█ As an alternative to Warner's motion seeking dismissal of defendant Robbins' counterclaim, Warner seeks a separate trial of the counterclaim. Under Fed.R. Civ.P. 42(b) a judge may grant a separate trial of a counterclaim:

in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy . . . .

The court's power to sever claims is discretionary requiring the balancing of benefits and prejudice resulting from severance of the counterclaim. The district court's determination will not be set aside absent a showing of abuse of discretion. *Garber v. Randell*, 477 F.2d 711, 714 (2d Cir. 1973). In this counterclaim a separate trial is not necessary. Although the Urban Cowboy litigation is substantively separate and distinct from the Kamakazi personality and mixed folio litigation, inclusion of the Urban Cowboy counterclaim will not confuse the issues in the Kamakazi folio litigation in such fashion as to require a separate trial. Warner's alternative motion for a separate trial is denied.

III. The Preliminary Injunction and Related Matters.

Subsequent to its motion to confirm the arbitrators' award, which motion has been granted as indicated above, Kamakazi on August 31, 1981 moved by order to show cause seeking a temporary restraint and preliminary injunction to bar Robbins from disposing of any mixed folios or other copyrighted material covered by the agreement which was the subject of the arbitration including a number of publications now in the possession of Hal Leonard Publishing Company ("Hal Leonard"), a Wisconsin corporation. The requested temporary restraint was issued on August 31, 1981. The motion for preliminary injunction was heard on September 4, 1981 at which time Hal Leonard appeared as a non-party, having been given notice of the hearing to contest any jurisdiction over that non-party Wisconsin corporation and to oppose any injunctive relief sought to be imposed by Kamakazi. The temporary restraint has just expired. The motion for preliminary injunction will be denied for the reasons set forth below which constitute the court's findings of fact and conclusions of law. Robbins' cross-motion for a stay pending arbitration will be disposed of as set forth below.

Reference has already been made to the arbitrator's award and the tangled procedural history of this dispute set forth in prior opinions of this court. The award contains the following language which Kamakazi asserts is controlling on this application:

RESPONDENT is permanently enjoined from printing or selling at any time in the future any of CLAIMANT'S compositions except those included in mixed folios (folios containing a collection of songs not associated with any particular artist) manufactured and sold by RESPONDENT before December 31, 1979, copies of which RESPONDENT may sell, but not print, until July 31, 1981 and copies of which RESPONDENT may sell thereafter in perpetuity provided RESPONDENT pays to CLAIMANT on or before July 31, 1981 all royalties that would be due on said copies if sold. With respect to any copies of mixed folios for which such advance royalties are not paid, on or before July 31, 1981, CLAIMANT shall have the right to purchase all or a portion thereof at RESPONDENT'S cost or in the alternative the right to require RESPONDENT to destroy all or a portion of said copies and receive an affidavit as to such destruction.

¶ 3. Arbitrator's Award, March 6, 1981.

It is undisputed that in December, 1980, Stephen L. Cottler ("Cottler") called Keith Mardak ("Mardak"), the executive vice-president and general manager of Hal Leonard, one of Robbins' regular customers, to offer to sell to Hal Leonard the mixed folios containing Kamakazi materials. Both parties to the conversation recognized that Robbins' rights to manufacture and sell these folios expired at the end of 1980.

A contract was entered into on December 31, 1980, which purported to transfer title to Hal Leonard. Hal Leonard was to pay for any materials which it sold under certain conditions and to put to Robbins for repurchase any unsold materials at the option of Hal Leonard. The transaction although large in amount, was not unusual as to its terms except perhaps as to the indemnification demanded and received by Hal Leonard. As a consequence of the agreement, these materials were delivered to Hal Leonard. A certain amount of the materials have been sold, for which Robbins has been paid. Cottler's affidavit and Mardak's testimony establish that the transaction was at arms length and that the contracting parties are independent corporations, each seeking their own purposes. Kamakazi has offered no evidence beyond the December 31, 1980 contract between Robbins and Hal Leonard to establish its claim of an agency relationship between them, which the contract fails to do.

Robbins asserts that it has accounted to Kamakazi for the sales made by Hal Leonard for which it has received payment, and Kamakazi has not challenged this assertion by any evidence offered by any officer or employee of Kamakazi with knowledge of the facts. It is, however, conceded by Robbins and Hal Leonard that a substantial amount of the Hal Leonard material has not been sold by Hal Leonard to third parties, and that consequently, no payment has been made to Robbins, and that no payment has been made by Robbins to Kamakazi covering such materials.

In addition to the materials covered by the Hal Leonard contract, Robbins possessed other mixed folios which it maintained in its inventory which were covered by the sell-off provision in the 1976 agreement and were referred to in the arbitrator's award quoted above.

Robbins has presented affidavits that on July 31, 1981 it mailed an accounting and payment to Kamakazi covering such mixed folios. Unfortunately, or deliberately as implied by Kamakazi, the envelope was misaddressed, failed to arrive, was returned to sender and was subsequently delivered to counsel for Kamakazi on August 21, 1981. The metered stamp relied on by Robbins to establish the mailing was that of United Artists Corporation, alleged to be Robbins parent or the corporation of which Robbins is a division.

The arbitrator's award concerning the sell-off of mixed folios as quoted above

is not devoid of a foundation in law. An arbitrator's findings and conclusions must be upheld provided they are rational or barely colorable. *John T. Brady & Co. v. Form-Eze Systems, Inc.*, 623 F.2d at 264; *Marcy Lee Mfg. Co. v. Cortley Fabrics Co.*, 354 F.2d at 43; *MCT Shipping Corp. v. Sabet*, 497 F.Supp. at 1082–83. This decision is not a "manifest disregard of the law where the arbitrator disregarded the law. *Andros Compana Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d at 704. The arbitrator's decision (¶ 3) respecting the sell-off provision directly reflects the provision set forth in the November 15, 1976 contract (¶ 6). The sell-off provision is therefore confirmed and enforceable. As to the sell-off provision the remaining question concerns whether the "sold and not returned" provision (¶ 2B)[4] affects the sell-off provision (¶ 6).

The December 31, 1980 transaction between Hal Leonard and Robbins was an arms-length sale, title passed and Robbins would appear to be liable for the royalty amounts involved. Absent a showing of an explicit agreement to the contrary, title to goods is deemed to pass "at the time and place at which the seller completes his performance with reference to the physical delivery of the goods." U.C.C. § 2–401 (McKinney's 1964); *Auto Rental Corp. v. Weisberg*, 54 Misc.2d 168, 281 N.Y.S.2d 400, 403 (1967); *Wickham v. Levine*, 47 Misc.2d 1, 261 N.Y.S.2d 702, 708, *aff'd*, 24 A.D.2d 1035, 264 N.Y.S.2d 785 (1965), *aff'd*, 23 N.Y.2d 923, 298 N.Y.S.2d 507, 246 N.E.2d 357 (1969). The court may consider the terms of the contract, the conduct of the parties, the usages of trade and the circumstances of the case. *Socony Mobil Oil Co. v. Wayne City Produce Co.*, 24 Misc.2d 519, 196 N.Y.S.2d 729, 733 (1959).

Although a buyer retains the right to return goods, a completed sale is generally deemed to have taken place and title passes to the buyer. U.C.C. 2–326 (McKinney's 1964); *In re H. & H. Beverages, Inc.*, 45 F.Supp. 124, 125 (W.D.N.Y.1942); *Bernadette, Joseph & Co. v. Van Buren*, 212 A.D. 702, 704, 209 N.Y.S. 559 (1925); *cf: Hyman Michaels Co. v. Senior & Palmer, Inc.*, 265 N.Y. 266, 272, 192 N.E. 407 (1934) (sale and repurchase contract). Therefore, the contract evidences a completed sale. Based on this proper reading of the contract, the apparent independence of Hal Leonard and Robbins, and the delivery of possession with full right to disposition, Kamakazi's challenge to the sale based solely on the contract is defeated. Further, of course, the effect of the Robbins/Hal Leonard contract is not an issue arising under the Kamakazi/Robbins' agreement.

Robbins seeks to defeat its immediate liability for the royalties from the Hal Leonard sale by a claim that under the terms of payment of the 1976 agreement its liability is limited only to materials "sold and not returned" (¶ 2B), but that language is not found in the sell-off provision of the contract and would appear to be inapplicable. The sell-off provision appears to attempt to require an accounting for and advance payment of royalties for all copies outstanding as of July 31, 1981. Moreover, Mardak testified to the trade practice of accepting returns within the accounting period, and it seems rather evident that the term "sold and not returned" simply seeks to describe the materials to be covered during the period accounted for, in this instance, the 1 year sell-off period ending December 31, 1980. However, this dispute does arise under the agreement, and such disputes have been previously held by me to be subject to arbitration. There is no indication that this issue was presented to the arbitrator, and therefore I will defer to his resolution, should Robbins insist on its right of arbitration. However, in view of the relatively clear language, in the event that the arbitrator does not confirm Robbins'

---

4. The contract of November 15, 1976 in paragraph 2(B) provides as follows:

With respect to each copy of each composition included in Mixed Folios, that portion of 12½% of the suggested retail selling price of such Mixed Folio, sold by you and not returned, as the compositions bear to the total number of copyrighted musical compositions contained therein as to which you are obligated to pay royalties.

view, prejudgment interest might well be considered with respect to any royalty amounts found to be due.

Even if the issue as seen by the court returns to arbitration for resolution as to liability, the matter of injunctive relief remains. Even assuming that Robbins failed to make a royalty payment with respect to the Hal Leonard folios, the injunction will be denied. To obtain a preliminary injunction plaintiffs must demonstrate (1) irreparable harm and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits making them a fair ground for litigation and a balancing of hardships tipping decidedly toward the party requesting the preliminary injunction. *KMW Int'l v. Chase Manhattan Bank, N.A.*, 606 F.2d 10, 14 (2d Cir. 1979); *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979); *Selchow & Righter Co. v. McGraw-Hill Book Co.*, 580 F.2d 25, 27 (2d Cir. 1978).

Kamakazi contends that it will be irreparably harmed by sales by Robbins and Hal Leonard because money damages cannot be adequately ascertained and thus are not sufficient compensation. Kamakazi alleges that its compositions were effectively the primary attraction in the sale of mixed folios due to their popularity compared to other composers' works. Therefore, they allege, Kamakazi compositions should be entitled to a portion of the royalties greater than the pro rata share they are generally entitled to. Due to the vast variety of folios printed it would be extremely difficult to ascertain the relative contribution of each of the Kamakazi tunes in each published folio and consequently, it is alleged, the measure of damages would be unascertainable. These losses, it is claimed, will result in reduced royalties from Manilow compositions on personality folios and sheet music from which Kamakazi would receive the entire royalty. These reduced royalties are asserted to be unascertainable as well. Moreover, it is claimed that large quantities of these folios can be sold quickly, thereby exacerbating the problem of determining damages.

Kamakazi's contentions are contested by Robbins. Robbins contends by affidavits of those experienced in the field that the very purpose of mixed folios is to sell a collection of musical compositions not identified with any particular recording artist, sometimes related by some common theme. (*E.g.* The Mellow Golden Flute, Disco Power, 23 Pop Hits). The value of the folio, it is alleged, lies in the variety of popular tunes rather than a particular artists' works. Although Kamakazi/Manilow compositions are often listed on the cover of the folios, other famous composers' works are listed as well. Moreover, individual Manilow compositions are generally available at a fraction of the mixed folio price.

 "Irreparable harm" means injury for which a monetary award cannot be adequate compensation. *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d at 72. The expected harm must be adequately presented as "not remote or speculative but . . . actual and imminent." *New York v. Nuclear Regulatory Comm.*, 550 F.2d 745, 755 (2d Cir. 1977) quoted at *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d at 72; *KMW Int'l v. Chase Manhattan Bank, N.A.*, 606 F.2d at 15. The evidence and allegations presented in arguing the preliminary injunction do not sufficiently rule out the possibility of money damages being determinable. Kamakazi's claim that Manilow compositions are the primary attraction in mixed folios is based solely on an affidavit of counsel and is opposed by affidavits of those active in the industry. Kamakazi's claim of irreparable injury has therefore not been sufficiently established.

Even if a showing of possible irreparable injury were adequately made the second prong of the standard test requiring a showing of (a) likelihood of success on the merits or (b) serious questions going to the merits and a balancing of the hardships decidedly in favor of Kamakazi, *KMW Int'l*, 606 F.2d at 14, has not been established. Even if Kamakazi were to succeed on the merits, the balance of the hardships do not weigh decidedly in Kamakazi's favor.

Kamakazi may recover money damages, possibly including an amount to compensate

for loss of good will and other competitive injury. Its license fees with respect to the infringing folios constitute only a slight percentage of the folio cost to the defendant. In addition an injunction pending an arbitrator's decision could result in lost sales, storage costs, administrative costs in preventing their sale and possible losses in the value of the folios in their becoming further outdated. *E.g.* Top Hits of 1978. These considerations indicate that the balance does not weigh decidedly in Kamakazi's favor. A preliminary injunction will therefore not be granted with respect to the Hal Leonard materials.

 With respect to the Robbins mixed folios, in addition to the questions of irreparability and balance of hardship just discussed, Robbins claims compliance with the arbitrator's award as a consequence of facts with respect to the mailing. The question of payment on July 31, 1981 is not an issue arising under the agreement but simply a mixed question of fact and law and I conclude that mailing, even under these circumstances, constituted payment. Although a party is entitled to timely performance, a promisor's tender of performance in good faith in compliance with the contract except for a minor deviation usually will avoid the breach and bind the promisee (Kamakazi) to the contract. *Clayman v. Goodman Properties, Inc.*, 171 U.S.App. D.C. 88, 518 F.2d 1026, 1035 (1973). Cf: *Nieman-Irving & Co. v. Lazenby*, 263 N.Y. 91, 94, 188 N.E. 265 (1933); *Witherell v. Lasky*, 286 A.D. 533, 145 N.Y.S.2d 624, 627 (1955) (substantial performance sufficient in a construction contract). In this case the deviation, misaddressing the payment envelope, does not significantly affect the substance of the agreement. Karen Adams, an employee of Robbins, stated that she addressed and mailed the check for the royalties to Kamakazi's address. Kamakazi's inferences of misconduct do not sufficiently rebut Robbins' presentation and the gravity of the breach. Therefore as to the mixed folios in Robbins' inventory, the arbitrator's award has been complied with, and the injunction will be denied provided payment is once again tendered by Robbins to Kamaka-zi for the folios sold by Robbins and for which it has received royalty payments.

Finally with respect to the remaining materials in Robbins' possession, the so-called "questionable folios," on the state of this record Kamakazi has failed to establish its claim that "Kamakazi compositions are included in an appreciable number of 80,258 mixed folios," not sold in accordance with the agreement of 1976. Therefore the possible irreparable injury has not been shown to be actual and imminent and is at best speculative. *New York v. Nuclear Regulatory Comm.*, 550 F.2d at 755; *Jackson Dairy, Inc. v. H. P. Hood & Sons*, 596 F.2d at 72. Therefore, its motion for preliminary injunction as to those unidentified folios, is denied with leave to renew upon a further showing. Both parties' requests for costs on this motion for a preliminary injunction are denied.

More remains to be done. Discovery on the action by Warner Brothers will be completed by November 30, 1981, Warner's draft of its pretrial will be served, and the final pretrial order filed on December 7, 1981 at which time the action will be placed on the trial calendar.

Settle order on notice within five (5) days.

IT IS SO ORDERED.